DONNA HARTIGAN, Plaintiff-Appellee, *v.* HUGH ROBERTSON, Defendant-Appellant.

First District (1st Division)    No. 79-1237

Opinion filed August 18, 1980.

Walter H. Djokic, of Pretzel, Stouffer, Nolan & Rooney, Chartered, of Chicago (Robert Marc Chemers and Joseph B. Lederleitner, of counsel), for appellant.

Philip E. Howard, Ltd., of Chicago (William J. Harte and Francis Patrick Murphy, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Donna Hartigan (plaintiff) brought suit to recover damages for personal injuries arising from an automobile accident with Hugh Robertson (defendant). The jury returned a verdict in favor of plaintiff for $50,000. Defendant appeals.

At about 4 p.m. on November 2, 1973, plaintiff was driving east on Dundee Road in Northbrook, Illinois. Shortly west of its intersection with Skokie Boulevard, Dundee Road consists of two eastbound and two westbound lanes. Immediately to the west of the intersection of Dundee Road and Skokie Boulevard the lanes are divided by a median raised curb. Farther to the west the raised curb becomes a "rumble strip which a vehicle can go over without damaging." There is a traffic light at the intersection of Skokie Boulevard and Dundee Road. The posted speed limit is 45 miles per hour.

Plaintiff drove in the inner, left lane at 40 to 45 miles per hour. She intended to turn left and proceed north on Skokie Boulevard. She began to decrease her speed 1½ blocks before the intersection. At 35 miles per hour, plaintiff observed defendant's car some four car lengths ahead. Defendant was moving slowly to the north in the driveway of Bojan's Auto Body Shop. The driveway was south of and perpendicular to the right, eastbound lane. Defendant intended to cross the two eastbound lanes and turn left to go west on Dundee Road.

After seeing defendant's car, plaintiff decreased her speed again and began "braking harder." She kept defendant's car in "continuous observation." Defendant's car entered the right lane. Plaintiff honked the horn, but defendant continued to move. Plaintiff noticed defendant's car moved into her lane going "north and west." Defendant was "making a left turn." The collision occurred in the left lane where plaintiff was. Plaintiff testified, "The point of impact occurred where the raised median starts and where you can still go over that bump in the road." The right front section of plaintiff's car was struck by the left front section of defendant's car. Plaintiff then told defendant, "I'm okay. I'm really shaken" and "I could not stop in time."

Defendant, then 82 years old, testified prior to the accident he was at a "dead stop" in the driveway of Bojan's Auto Body Shop. Defendant

testified, "There were a few cars coming along." When he looked to the left, "there wasn't a thing in sight." To the right, the stop light at Skokie Boulevard was red. Defendant stated, "Then I proceeded and when I got on the outer lane, I looked again and this man stopped to let me go through. I had my directional light on for a left turn." He was going two or three miles per hour. As he turned left, defendant testified, he "couldn't see anything. The sun was right in my face." Then he collided with plaintiff's car. Defendant testified he was attempting to go to the left or west on Dundee Road to Waukegan Road. That was his route to his home.

Defendant first contends this case is close on the facts and the jury might have decided either way. Defendant cites several errors in the trial which "tip the scales in favor of the successful party" and thus require a reversal.

We disagree. In our opinion the evidence of defendant's negligence is strong beyond doubt. Plaintiff testified traffic conditions on Dundee Road were "busy." Defendant testified there were a few cars and one yielded to let him cross in a northerly direction. Defendant, despite being blinded by the sun, emerged from a driveway in an effort to proceed across two eastbound lanes of traffic in a northwesterly direction so that he could cross the median and go west on Dundee Road. There was evidence defendant could not go due north across Dundee Road at that point without traversing to the west. Photos in evidence show a raised median curb between the eastbound and westbound lanes immediately north of Bojan's Auto Body shop. Plaintiff testified defendant had to go north and then west over the median strip. The photographs also show a lower and broader median strip, or "rumble strip," in the area somewhat west of the body shop. Defendant had his left turn signal flashing to show his intention to proceed west on the eastbound lanes.

Section 11—906 of the Illinois Vehicle Code (Ill. Rev. Stat. 1979, ch. 95½, par. 11—906) provides:

"The driver of a vehicle about to enter or cross a highway from an alley, building, private road or driveway shall yield the right-of-way to all vehicles approaching on the highway to be entered."

Similarly, section 11—1205 (Ill. Rev. Stat. 1979, ch. 95½, par. 11—1205) provides:

"The driver of a vehicle emerging from an alley, building, private road or driveway within an urban area shall stop such vehicle immediately prior to driving into the sidewalk area * * *, or in the event there is no sidewalk area, shall stop at the point nearest the street to be entered * * *, and upon entering the roadway shall yield the right-of-way to all vehicles approaching on such roadway."

■■ Defendant thus had a clear statutory duty to yield to all oncoming

traffic. In addition, defendant conceded he was partially blinded by the sun. If so, it was his duty to avoid inflicting injury on one who might be using the street while defendant was unable to see. Proceeding without vision has been aptly described as "negligence as a matter of law." (*Barth v. Reichert* (1962), 34 Ill. App. 2d 472, 478, 181 N.E.2d 609. See also *Kirby v. Swedberg* (1969), 117 Ill. App. 2d 217, 223-24, 253 N.E.2d 699.) In *Duffy v. Cortesi* (1954), 2 Ill. 2d 511, 518, 119 N.E.2d 241, a number of cases from Illinois and other jurisdictions are cited for this point.

Defendant cites cases from Minnesota, Kansas and Texas as support for his statement that "A driver momentarily blinded by the sun is not negligent as a matter of law." We need not and we expressly refrain from passing on this issue. The sole question before us at this point is the degree to which the verdict is supported by the evidence. In addition, the jury returned a special interrogatory finding plaintiff not guilty of contributory negligence. In both instances the jury acted properly. Plaintiff's statement of her inability to stop in time was truthful and did not constitute an admission of contributory negligence. The evidence in support of the verdict and the interrogatory is so strong that contrary results were hardly possible.

■■ Defendant contends plaintiff's attorney pre-educated and indoctrinated the prospective jurors. One of defendant's principal criticisms is the use of the word "victim" by plaintiff's trial attorney. Our examination of the record shows this word was used the first time without objection. On its second and apparently final use, defendant promptly objected. The trial court sustained defendant's objection.

In addition, defendant points out plaintiff's trial counsel stated to a prospective juror plaintiff's burden of proof was the "greater weight of the evidence" and not "beyond a reasonable doubt." Defendant objected as to plaintiff attempting to instruct the jury. The trial judge sustained defendant's objection as to the form of the question. In our opinion, Illinois Pattern Instructions, Civil, Nos. 1.01, 21.01 and 21.02, all given by the trial court, were sufficient to clarify this situation.

■■ Defendant also urges the trial court should have sustained defendant's objection when plaintiff asked a prospective juror if a case involving thousands of dollars was a "fender bender." This phrase "fender bender" was used by both counsel and by the prospective jurors several times. We have examined the voir dire to determine its fairness. The entire procedure is reflected in about 200 pages of the record. During this time, counsel for defendant made three objections. Two were sustained and one was overruled. These rulings by the trial court were within the bounds of reasonable discretion. (*People v. Lobb* (1959), 17 Ill. 2d 287, 300, 161 N.E.2d 325.) No specific claim of bias or prejudice is raised by defendant. We find no reversible error in this regard.

In his opening statement plaintiff's trial attorney stated prior to the accident defendant had picked up his car "from having some body work done." Defendant objected on the ground this statement was "prejudicial and unrelated to the cause on trial." Defendant asserts here plaintiff's trial attorney should not have stated facts he did not intend to prove and could not prove, and prior accidents were not admissible into evidence.

■■ The statement some body work had just been done on a car does not necessarily mean the car was involved in a prior accident. But, in any event, "one cannot complain of admission of evidence offered by one party where practically the same evidence is afterward introduced by the party so complaining." *Forest Preserve District v. South Holland Trust & Savings Bank* (1976), 38 Ill. App. 3d 873, 876, 349 N.E.2d 689; *Santiago v. Package Machinery Co.* (1970), 123 Ill. App. 2d 305, 313, 260 N.E.2d 89, *appeal denied* (1970), 44 Ill. 2d 586.

■■ Defendant's attorney questioned defendant on this very subject. He asked defendant where he was coming from when he had the accident, had he just picked up his car from the body shop, was he familiar with the building, and other related questions. Any conceivable prejudicial effect the statement by plaintiff's attorney may have had was rendered meaningless by the later testimony elicited by defendant's attorney. In addition, at the trial court's suggestion, plaintiff's attorney modified this statement to say defendant was "coming out of the driveway from the garage." We find no error here.

Defendant asserts plaintiff's attorney in his closing argument misled the jury by reference to facts never adduced in evidence. Plaintiff's attorney stated to the jury defendant testified damage to his car amounted to over $751. Plaintiff's counsel added that instead of having plaintiff testify as to numbers, he would "make one picture worth a thousand words." He then told the jury they could compare the damage to the vehicles by looking at the photographs.

■■ "In arguing a case to the jury, counsel is permitted broad latitude to draw reasonable inferences and conclusions from the evidence." (*Levenson v. Lake-To-Lake Dairy Cooperative* (1979), 76 Ill. App. 3d 526, 537, 394 N.E.2d 1359.) Plaintiff's attorney in the instant case may well have made these references to emphasize the impact the plaintiff endured. Actually, the statement by plaintiff's counsel may be construed as proper response to the evidence of property damage adduced by defendant. The reference was reasonable.

Defendant next contends the trial court should not have allowed the investigating police officer to testify as to whether he issued a traffic ticket at the scene of the accident. Defendant called the officer as his witness. On direct examination by defense counsel, the officer testified completion of his usual investigation entailed "citing of a driver or drivers." On cross-

examination by plaintiff's attorney, over objection, the officer testified citing a driver meant issuing a ticket. When the officer was asked if he issued a ticket, the defendant's attorney objected. The trial court overruled the objection and the officer answered he did issue a ticket.

■■ Under the circumstances here disclosed, we find no reversible error in allowing the officer to testify simply that he had issued a ticket. Plaintiff's counsel was not allowed to ask to whom the ticket had been issued or what type of citation it was. These facts differentiate the instant case from *Schneider v. Kirk* (1967), 83 Ill. App. 2d 170, 226 N.E.2d 655, *appeal denied* (1967), 36 Ill. 2d 632, and *Allen v. Yancy* (1965), 57 Ill. App. 2d 50, 206 N.E.2d 452, cited and relied upon by defendant.

Concerning the final alleged trial error, plaintiff was desirous of proving defendant had pleaded guilty in traffic court and was fined. Defendant sought to overcome this by testimony he had actually pleaded not guilty. Plaintiff first offered in evidence a certified copy of the "half sheet" or court record. In chambers, defendant commented the entries on this exhibit were illegible. Counsel for defendant stated that since the judge who heard the traffic case had made the entries, "We need Judge Limperis here to testify to that." Counsel for plaintiff stated the presence of the traffic court judge was unnecessary. After further discussion, the trial court ruled the certified copy was illegible and he refused to receive it in evidence. Counsel for plaintiff then agreed he would bring in the traffic court judge.

Before that event occurred, plaintiff called defendant for adverse examination. Over objection defendant answered he had appeared in the traffic court after the occurrence and had pleaded not guilty, "but I don't think they heard the not." This in effect raised defendant's theory regarding an attempt impeachment of the plea of guilty.

■■ The fact that a defendant charged with negligence had pleaded guilty in traffic court is proper evidence as an admission against interest. (See *Cogdill v. Durham* (1976), 43 Ill. App. 3d 940, 942, 358 N.E.2d 6.) After this testimony by defendant, counsel for plaintiff called Judge Limperis who had presided at the traffic hearing. The judge testified the entries on the half sheet meant plea of guilty, jury waiver, finding of guilty, and a fine of $10 plus $5 costs. Counsel for defendant cross-examined the traffic judge who testified he could not recall if defendant actually said guilty or added the word "not." No objection was made by counsel for defendant to this portion of the testimony. Counsel for defendant then cross-examined the traffic judge with reference to the subject matter of whether defendant actually pleaded guilty.

We have given careful consideration to each and all of these alleged trial errors. It is our considered opinion that none of the trial errors above

discussed, either individually or collectively, caused substantial prejudice to the defendant. As above pointed out, the strong evidence of defendant's negligence and of plaintiff's freedom from contributory negligence made the verdict here the only possible or reasonable conclusion which the jury could have reached.

In addition, the object of this court on review "is not to determine whether the record is totally free of error but whether any error occurred which substantially prejudiced plaintiff and affected the outcome below." (*Kyowski v. Burns* (1979), 70 Ill. App. 3d 1009, 1019, 388 N.E.2d 770; *Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 372, 366 N.E.2d 327, *appeal denied* (1977), 66 Ill. 2d 639.) We conclude defendant was not prejudiced by any or all of the alleged trial errors above discussed.

Defendant finally argues the award of $50,000 in damages is excessive. Plaintiff's total medical and hospital expenses were approximately $1949.58. Plaintiff had car rental expense of about $223.59.

■■ "The amount of damages to be awarded is largely within the discretion of the jury." (*Cummings v. Chicago Transit Authority* (1980), 86 Ill. App. 3d 914, 408 N.E.2d 737.) Unless improper instructions were given or evidence erroneously excluded, courts are "reluctant to overturn a jury's determination of damages when the award is within the range of the evidence * * *." (*Terracina v. Castelli* (1979), 80 Ill. App. 3d 475, 481, 400 N.E.2d 27; *Palmer v. Avco Distributing Corp.* (1979), 75 Ill. App. 3d 598, 608, 394 N.E.2d 480.) The test of an excessive verdict is whether the total amount thereof falls within the flexible limits of fair and reasonable compensation or is so large as to shock the judicial conscience. *King v. City of Chicago* (1978), 66 Ill. App..3d 356, 359, 384 N.E.2d 22; *Chapman v. Foggy* (1978), 59 Ill. App. 3d 552, 559-60, 375 N.E.2d 865.

■■ The verdict was not excessive here. Plaintiff's condition was diagnosed as chronic cervical strain. She was under the care of an orthopedic surgeon for 4½ years following the accident. For the first 18 to 24 months, plaintiff was in constant pain and suffered from numbness in two fingers of the right hand. While in the care of her physician, she received physical therapy, traction, and cortisone injections. She underwent various tests including an electromyogram and cervical myelogram. She took pain pills and muscle relaxants. She wore a cervical collar. Her doctor advised her active sports participation would aggravate her injuries. He testified plaintiff may continue to have recurrent episodes of pain. He testified there was "some residual scar tissue in the muscle and ligaments which is a permanent status in her neck." Plaintiff said she continued to have recurrent pain, but it has been controlled by pain pills and muscle relaxants.

Although plaintiff's actual expenses were minimal in contrast to the final award, the court in *Kupcikevicius v. Fitzgibbons* (1976), 41 Ill. App. 3d 405, 413, 354 N.E.2d 434, held:

> "In determining on appeal whether a disputed verdict is the result of passion or prejudice, emphasis is not placed solely on the specific medical expenses incurred by the injured claimant. [Citation.] Rather, consideration should also be given to all of the testimony surrounding the claimed elements of damage [citation] as well as the fact that the trial judge, who saw and heard all that took place at trial, approved the verdict."

For these reasons, we affirm the judgment appealed from.

Judgment affirmed.

O'CONNOR and CAMPBELL, JJ., concur.