BAY STATE INSURANCE COMPANY, Plaintiff and Counterdefendant-Appellant, *v.* GERALD WILSON *et al.*, Defendants and Counterplaintiffs-Appellees.

Fifth District   No. 81—147

Opinion filed July 16, 1982.—Rehearing denied August 20, 1982.

HARRISON, J., dissenting.

Michael J. Nester, of Donovan, Hatch & Constance, P.C., of Belleville, for appellant.

Jeanne Sathre and Mark Glass, both of Cohn, Carr, Korein, Kunin, Schlichter and Brennan, of East St. Louis, for appellees.

JUSTICE JONES delivered the opinion of the court:

This is an appeal by the Bay State Insurance Company (Bay State) from two judgments of the circuit court of Madison County. The cases originated from an incident wherein James B. Johnson (Johnson) shot Gerald Wilson (Wilson) in the back with a .12-gauge shotgun fired at point-blank range. The appeal turns upon an interpretation of an exclusionary clause contained in a personal liability section of a homeowners insurance policy issued by Bay State to Johnson.

The shooting incident occurred in August of 1972. The facts attending the shooting may be briefly stated. Joyce Vaughn, Wilson's girlfriend, lived in a basement apartment in Johnson's home in Alton. She decided to move to another apartment, and Wilson and two of his friends went with her during daylight hours to help with the move.

Ms. Vaughn stayed in the car while Wilson and the others went to her apartment. Wilson did not have a key and was endeavoring to gain entrance without one, apparently through a window. The noise attracted Johnson who stuck his head out an upstairs window and asked Wilson what he was doing. Johnson knew Wilson through Wilson's prior visits to the apartment to see Ms. Vaughn. Wilson, aged 22 at the time, told Johnson, aged 72 at the time, that he was going to get the furniture. Johnson then said something to the effect, "Oh no you ain't, get off my property." Johnson then disappeared from the window, got his .12-gauge shotgun and went outside to confront Wilson and the others. The two accounts of what happened next differ but little. Johnson testified that as he went outside Wilson separated himself from the others, his right hand was in his right pocket and his back was partially toward the others. The other two men left quickly. Wilson stayed, "made a flash" out of his pocket with his right hand, and Johnson shot him. Wilson testified that when Johnson came out with the shotgun, he, Wilson, said, "O.K., I'm leaving." He took one step backward and turned to the right, whereupon Johnson shot him. Wilson's version of the incident was corroborated by Ms. Vaughn. Wilson, in fact, had no weapon, and he received serious and permanent injuries from the shooting.

The shooting gave rise to four lawsuits. The first was a criminal prosecution of Johnson. He was initially charged with attempted murder. Subsequently, the charge was reduced to aggravated battery, and on October 16, 1973, in a trial before the court sitting without a jury, defendant was found guilty of aggravated battery.

The second case to arise from the shooting incident sounded in tort for damages for personal injury. A one-count complaint was filed December 18, 1972, alleging that Johnson had maliciously, intentionally and feloniously assaulted Wilson with a loaded shotgun. Johnson's personal attorneys filed a responsive pleading and tendered defense of the action to Bay State pursuant to the provisions of a homeowners insurance policy. Bay State denied coverage since the complaint alleged an intentional act by the insured for which there was no coverage under the policy. Johnson's personal attorneys then filed a third-party complaint against Bay State to require them to defend Johnson in the pending action. The third-party complaint was dismissed upon motion.

Plaintiff filed an amended complaint, adding count II which charged Johnson with "negligence in use and possession" of the shotgun. Again the defense of the action was tendered to Bay State, and it again refused as to count I. However, it agreed to provide a de-

fense to count II, which sounded in negligence, under a reservation of rights. The firm of Reed, Armstrong, Gorman and Coffey was retained by Bay State for this defense, and it entered an appearance for defendant on May 16, 1973.

Subsequently, Wilson amended count II of his complaint to allege that Johnson had "failed to appreciate, evaluate and assess the circumstances of plaintiff's presence on the premises" in determining that there was a need for self-defense. Wilson then also added a count III to his complaint, which alleged that defendant was "reckless and wanton" in his assessment of the need for self-defense.

Still later, count I of the complaint was amended so as to allege that defendant unreasonably "used excessive force with a loaded shotgun" in shooting plaintiff in the back. Count I, as amended, was dismissed by plaintiff immediately prior to trial. Reed, Armstrong, Gorman and Coffey filed on behalf of defendant denials of all material allegations of counts II and III and pleaded as an affirmative defense self-defense by Johnson in that any action taken by him was reasonably believed necessary to defend himself and prevent death or great bodily harm.

Prior to trial, Johnson's personal attorney demanded of Bay State that it tender the policy limits in settlement of the case. The demand was refused, and on March 25, 1975, the case went to trial before the court sitting without a jury. After hearing the evidence, the court entered judgment for Wilson upon count II, that which charged negligence, but found in favor of defendant on count III, that which charged reckless and wanton misconduct. Damages were assessed at $100,000. Reed, Armstrong, Gorman and Coffey filed a post-trial motion, which was denied. The case was appealed to the Appellate Court for the Fifth District. In a Rule 23 order issued on December 14, 1977, this court, with one judge dissenting, affirmed the judgment. (54 Ill. App. 3d 1114.) Petition for leave to appeal to the supreme court was denied.

On September 5, 1974, Reed, Armstrong, Gorman and Coffey had written Bay State advising it of a conflict of interest that existed because of the duty of the firm to afford defendant "the best defense possible." The letter further advised Bay State that the Reed firm would be unable to participate in any way in the determination of the policy coverage question. Bay State thereupon retained the services of another firm of attorneys to file a declaratory judgment action in order to determine the policy coverage question. This declaratory judgment action was the third lawsuit to arise from the shooting incident. Wilson filed an answer and a counterclaim in the declaratory judg-

ment action, alleging that Bay State had negligently or in bad faith refused to settle for their policy limits. The counterclaim prayed for the payment of the $100,000 judgment that had been rendered in his favor in the underlying lawsuit. This counterclaim for negligence or bad faith in refusing to settle the tort claim within policy limits was the fourth lawsuit to arise from the shooting incident. The counterclaim was dismissed upon motion by Bay State, apparently because Wilson had no personal cause of action against the insurer.

A second answer and counterclaim was filed by Wilson in the declaratory judgment action on July 20, 1978. Motions to dismiss were again filed by Bay State. The motions were denied on August 17, 1978.

The defendant in the underlying tort action, James B. Johnson, died on January 2, 1977, and a suggestion of death was filed. On September 5, 1979, the personal representative of the estate of James B. Johnson, deceased, assigned to Wilson the cause of action asserted against Bay State for its refusal to settle within its policy limits.

The declaratory judgment action was severed from the counterclaim for trial and was tried before the court sitting without a jury. During the trial it was stipulated by both parties that "James Berry Johnson recklessly and wantonly determined that he was justified in the use of lethal force against Gerald Wilson in the defense of his person and property, and that as a result of that evaluation by James Berry Johnson he fired his shotgun intentionally at Gerald Wilson, causing the injury which gave rise to this action." Additionally, the record of the conviction of James B. Johnson of the crime of aggravated battery for the shooting of Wilson was introduced into evidence. Wilson's attorney objected to any consideration of the criminal proceeding.

Following trial of the declaratory judgment action upon stipulated evidence, the court found (1) Johnson's primary intent was that of self-defense rather than that of injury to Wilson, (2) neither wilful, wanton nor reckless misconduct amounts to a specific intent to cause injury, and (3) therefore, Johnson lacked the specific intent to harm Wilson required to bring his act within the scope of the exclusionary clause of the policy. No finding was made regarding that portion of the exclusionary clause which provided no coverage if the act by the insured was "expected" to cause injury or property damage. Judgment in the declaratory judgment action was accordingly rendered against Bay State. This meant that the court found that there was coverage under the policy terms for the shooting incident involved.

Subsequently, in the severed trial of the counterclaim, another

judge of the court ruled that the assignment of the policy coverage claim of Johnson against Bay State was valid and that Bay State had been guilty of bad faith in its refusal to settle the underlying tort case within its policy limits. Accordingly, judgment was rendered against Bay State on the counterclaim in favor of Gerald Wilson in the amount of $100,000.

Bay State now appeals the adverse judgments rendered in the declaratory judgment action and in the action for negligence or bad faith in refusing to settle the underlying tort claim within the policy limits of $25,000.

The homeowners policy in question contains the following exclusion applicable to its liability section:

> "This policy does not apply *** to bodily injury or property damage which is either expected or intended from the standpoint of the insured."

In its judgment of January 2, 1979, the declaratory judgment case, the court made the following findings and decision:

> "The court finds that James Johnson had an honest belief that he faced a situation which called for self-defense, even though a reasonable man would not have believed so. The court finds that coverage under this contract of insurance does not extend to any act the insured intended and expected to cause injury. The court finds that the construction generally placed upon such exclusionary language is that the injury is intended or expected if the insured has acted with the specific intent to cause harm to a third party. Under this construction neither wilful, wanton, or reckless misconduct amounts to a specific intent to cause injury. Thus the fact that Johnson intended to shoot is not conclusive of the issue. His primary interest was not that of injury to Wilson but rather defense of himself. Thus the court finds that the exemption clause does not exclude Johnson from insurance coverage under his policy with respect to the injury to Gerald Wilson."

In rendering its judgment the trial court placed principal emphasis upon the case of *Cowan v. Insurance Company of North America* (1974), 22 Ill. App. 3d 883, 318 N.E.2d 315. Like emphasis is continued by Wilson in his brief in this appeal. The plaintiff in the *Cowan* case was the insured in a policy issued by defendant insurance company which insured against liability for injuries caused to others. The policy contained an exclusionary clause which provided that coverage would not extend to "any act committed by or at the direction of the insured with intent to cause injury or damage to person or property."

The plaintiff had been involved in a traffic dispute with one Graw. In an ensuing argument plaintiff assaulted Graw with his fists, knocked him down and caused the fracture of a leg. Graw sued plaintiff for assault in a complaint which alleged that the plaintiff had violently assaulted him, wrongfully struck him with his fists and knocked him down and fractured his leg. The complaint further alleged that the assault was wilful and malicious. In accord with a jury verdict, Graw received a judgment against plaintiff for $8,000. Plaintiff then brought a declaratory judgment action against his liability insurer to compel payment of the Graw judgment. The complaint in the declaratory judgment alleged that while the policy of insurance was in effect, plaintiff had been involved in a traffic dispute with Graw, that in the ensuing argument plaintiff inadvertently had come into contact with Graw, causing him to lose his balance and fall to the ground, and that the act causing the fall and injury to Graw was unintended and accidental. The insurer defended on the ground that by reason of the previous litigation between the plaintiff and Graw the plaintiff was collaterally estopped to deny that the injuries to Graw were intentional. The trial court granted summary judgment for the plaintiff. On appeal the defendant insurance company argued that the doctrine of collateral estoppel would operate to prevent plaintiff from relitigating the intentional injury issue in the declaratory judgment action and that since in the prior tort litigation plaintiff had been found guilty of assault and battery, further consideration of his intent in administering the beating to Graw was foreclosed. The plaintiff argued that the issue was not whether he had committed an intentional tort against Graw but whether he had intended to injure him. Although he had committed an intentional act, plaintiff said, the exclusionary clause of the policy is applicable only when it can be demonstrated that the injury was intentionally inflicted.

The appellate court held in *Cowan* that before the defendant insurance company can be absolved from liability under the policy exclusion, it must be demonstrated that the plaintiff specifically intended to injure Graw. Turning to the pleadings and instructions used in the tort action, the court noted that the jury was told that the plaintiff had been charged by Graw with a wilful and malicious assault and that a wilful and malicious assault had occurred if the plaintiff in his action had intended to harm *or* displayed an utter indifference to or conscious disregard for the safety of others. Since the instruction was phrased in the disjunctive, the court said, it could not be presumed that the jury had decided the issue of an intentional harm to Graw. The court reversed the summary judgment for the plaintiff and re-

manded the case for a trial on the question of whether plaintiff had intended to injure Graw when he committed the assault.

We cannot agree that *Cowan v. Insurance Company of North America* requires that we affirm. We think this case is factually more closely aligned with, and is governed by, the supreme court case of *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335. In that case the insured, Paul, had struck plaintiff on the head with a club. The plaintiff sued the defendant and the bar where the assault had occurred. The defendant's liability insurer refused to defend because of a policy exclusion clause which provided, in part:

> " '[T]he insurance does not apply to Bodily Injury or Property Damage arising out of assault and battery or out of any action or omission in connection with the prevention or suppression of such assault and battery.' " (74 Ill. 2d 132, 140, 384 N.E.2d 335, 337.)

The plaintiff obtained a default judgment for $30,000. Prior to the default judgment, the defendants had paid the plaintiff $100 for an agreement not to execute against them on any judgment but left him free to pursue the insurer for collection of the judgment. The plaintiff garnisheed the insurer and obtained judgment in the circuit court for $30,000. The insurer filed a section 72 petition (Ill. Rev. Stat. 1977, ch. 110, par. 72) in defendants' names to vacate the default judgment, and it was denied. The insurer appealed the garnishment order, and the defendants appealed the denial of the petition to vacate the default judgment. The appeals were consolidated and the appellate court affirmed. The supreme court noted that the insurer's investigation showed that the occurrence in question was in fact a battery and that defendant Paul, the insured, had been found guilty of the crime of battery in a bench trial upon stipulated facts. The plaintiff initially had filed a complaint charging the defendants with wilful and wanton misconduct. After depositions had been taken, plaintiff filed an amended complaint alleging that defendants' "negligently struck plaintiff on the head." After the amended complaint was filed, the defendants' personal attorney demanded that the insurer defend defendants on the amended complaint. The demand was refused on the grounds that investigation had shown that the occurrence was outside the coverage of the policy. The supreme court said:

> "With the exception of the amended complaint, all the facts, depositions and pleadings in the present case clearly indicate that the claim was based on an intentional battery by Ben Paul, not on negligence. It is equally clear that the plaintiff's attorney was well aware that the defendant's act was a battery and

that he filed the amended complaint charging negligence solely for the purpose of bringing the action within potential insurance coverage ***. There is no explanation for the procedures followed other than the desire of plaintiff's counsel to maneuver the insurer into a position where it would be obligated to pay the judgment and estopped from raising the defense of noncoverage." 74 Ill. 2d 132, 145, 384 N.E.2d 335, 340.

Continuing with its opinion in *Thornton*, the supreme court noted that it was the plaintiff's position that since the insurer failed to defend a suit brought against the insured, it is estopped from asserting lack of coverage. The supreme court stated that although this may be the general rule it had no application under the facts of the case. The court then discussed the proper consideration to be given in the civil case against the insurer to the conviction of plaintiff Paul of the crime of battery. The court reviewed cases from other jurisdictions. Some had adopted a rule that held such convictions were to be considered as conclusive evidence in the derivative civil proceeding, and some had adopted a rule that such convictions were to be considered *prima facie* evidence only in the derivative civil proceeding. Following *Smith v. Andrews* (1964), 54 Ill. App. 2d 51, 203 N.E.2d 160, the court adopted as the preferred rule that which holds that proof of a conviction of a crime is admissible in a civil case as *prima facie* evidence. "This approach," the court said:

> "preserves the opportunity to rebut the factual basis of the conviction insofar as those facts are applicable to the civil proceeding. Also, it does not conclusively establish that there was no duty to defend as the Oregon court held in *Casey*. In our case, the evidence of the defendant Paul's conviction of battery should have been admitted in the garnishment proceeding as *prima facie* evidence that his striking of the plaintiff constituted a battery." (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 151, 384 N.E.2d 335, 343.)

The *Thornton* court noted that the defendant had been represented at all times by an attorney, had been convicted of a serious misdemeanor, could have been incarcerated for one year and was, in fact, fined $500. Those factors rendered the criminal proceeding of sufficiently serious import to lend an air of credibility to the conviction and made it unlikely that there would have been an unjust conviction. It was concluded, therefore, that Paul's conviction was reliable evidence of the fact that he did, in fact, commit a battery. The court reversed the judgment in the policy garnishment and remanded the case for further proceedings.

The *Cowan* case differs from *Thornton v. Paul* to some extent. The latter permits the use of a criminal conviction as *prima facie* evidence in a derivative civil case. The underlying case in *Cowan* was one in tort for assault. Of course, the case under consideration, like *Thornton v. Paul*, involves a criminal prosecution. *Thornton v. Paul* does not consider the use of an adjudication in a prior civil case where presumably the rule of collateral estoppel would apply to prohibit relitigation of the issue of "intent to injure." In the *Cowan* case, along with others which need not be cited, there was an obvious attempt to phrase the issue in the suit upon the liability policy in such manner as to preclude the application of the collateral estoppel rule. Other cases, which need not be cited, apply the same technique. Such practice was noted in *Thornton v. Paul*, as we have quoted above. In *Cowan*, it was found possible to avoid a collateral estoppel because in the underlying case the "intent to injure" issue had not in fact been litigated in such a manner as to exclude the possibility that the assured acted with an intent other than an intent to injure. *Cowan* held that if such other intent could be established, the insurer is liable under its policy and the exclusionary clause would be inapplicable.

The approach in *Thornton v. Paul* differs markedly from that of the *Cowan* case in that the underlying case in which the issue of "intent to injure" was litigated, or, at least, possibly was litigated, was a criminal prosecution. The specific crime involved there was battery. As noted above, the supreme court decided that criminal convictions could be used in civil cases as *prima facie* evidence of the facts litigated in the criminal case.

In this case we are considering criminal conduct of greater magnitude than that involved in *Thornton v. Paul*, and this fact imparts more force to the *prima facie* evidence rule there adopted. The insured here, Johnson, was originally charged with attempted murder. Prior to trial that charge was reduced to aggravated battery, a Class 3 felony, unarguably a serious crime. Johnson was represented by an attorney at all times during the criminal proceeding. He was convicted and sentenced for the crime of aggravated battery. The very crime of which Johnson was convicted speaks to the intent with which he acted and, necessarily, to any assertions that his intent in shooting Wilson was that of self-defense and not a specific intent to injure. Section 12—4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 12—4(a)) provides: "A person who, in committing a battery, intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement commits aggravated battery." Conviction of that crime can be had only upon a showing of a specific intent to

cause great bodily harm, disability or disfigurement. Under the authority of *Thornton v. Paul,* such determination must be regarded as foreclosing further litigation in this civil case upon the issue of intent to injure.

As in *Thornton v. Paul,* the complaint in the underlying tort case against Johnson was amended—four times after the original filing—in an attempt to evade the consequences of the criminal conviction and to define the shooting incident in such manner as to state a cause of action that would not be subject to the exclusionary clause of the policy. Because of the nature of the criminal conviction of Johnson, such cannot be done.

We hold, therefore, that the trial court committed error in finding that Johnson shot Wilson in the back at point-blank range with a .12-gauge shotgun but did not intend to injure him. The factual circumstances of the incident and the nature and elements of the criminal conviction of Johnson compel the determination as a matter of law that he did intend to shoot and did intend and expect to injure Wilson. We do not consider this result to be in derogation of the *"prima facie"* rule of *Thornton v. Paul* because we do not take the criminal conviction of Johnson as conclusive evidence of his intent to cause bodily harm. Rather, the attendant facts, taken with the criminal conviction, permit but one conclusion, and it is arrived at as a matter of law. As to this, we perceive no room for reasonable minds to differ.

Although unneccessary to our decision, we note that the policy exclusion in this case is more broad than those considered in *Thornton* and *Cowan* in that it excludes coverage for bodily injury that is either *expected* or *intended.* Thus, whatever the intent that caused Johnson to shoot, if he expected that bodily injury to Wilson would be the consequence, there was no coverage afforded by the policy. See *Farmers Automobile Insurance Association v. Medina* (1975), 29 Ill. App. 3d 224, 329 N.E.2d 430.

The result we have reached means that the policy exclusion is applicable and the policy of Bay State affords no coverage for Johnson. Accordingly, the declaratory judgment against Bay State is reversed. Since the declaratory judgment against Bay State is reversed, the judgment against Bay State for bad faith in failing to settle Wilson's claim within the policy limits is also reversed.

Judgments reversed.

KASSERMAN, J., concurs.

JUSTICE HARRISON, dissenting:

I respectfully dissent from the majority and would affirm the decision of the trial court for the following reasons.

Bay State maintains, and the majority has concluded, that Johnson's shooting Wilson was intentional and that, therefore, the bodily injury which was inflicted on Wilson was "either expected or intended." The majority relies primarily on the supreme court opinion in *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335. The focal point in *Thornton*, as here, was the construction of an exclusionary clause in an insurance policy. However, the language of the two clauses which the courts have been called upon to construe is markedly different. In *Thornton*, the insurance policy specifically excluded coverage for "assault and battery." Thus the court was absolutely correct to hold that a criminal conviction for battery was *prima facie* evidence that the insured's conduct was excluded under that particular clause.

Here, however, the clause in question does not contain a reference to battery or to any other specific act. It refers only to injuries "intended or expected." Because this broad language presents a different problem of construction, the issue here is closer to that decided in *Cowan v. Insurance Company of North America* (1974), 22 Ill. App. 3d 883. The trial court in this declaratory judgment action, also, was persuaded by the *Cowan* rationale.

In *Cowan* the policyholder had a civil judgment entered against him. However, in the complaint for declaratory judgment to determine policy coverage, the insured alleged that the injury was accidental and a result of his defending himself. The *Cowan* court concluded that, for purposes of determining insurance coverage, the conduct of the insured could not be deemed intentional merely because tortious or criminal liability had been imposed in prior litigation between the victim and the insured. The underlying rationale was that, even though the defendant might be civilly or criminally liable, the liability would have been imposed because he unreasonably evaluated the need for defensive action, not because he intended to injure the victim. The court relied on cases from other jurisdictions which found that an insured's honest belief that he was confronted with a self-defense situation was a sufficient basis upon which to hold that the insured may not have specifically intended to harm the victim, in spite of evidence that the insured intended to engage in the conduct which caused the harm. The court held that an issue of fact remained, *i.e.*, whether *Cowan* intended the specific harm, and that, therefore, summary judgment had been improperly granted.

Employing the same rationale in the recent case *Grinnell Mutual Reinsurance Co. v. Frierdich* (1979), 79 Ill. App. 3d 1146, 1148-49, the court drew a careful distinction between "an intentional act and an intentionally caused injury," stating that coverage may still exist under a clause excluding intentional injuries even if an act was intended, so long as it can be shown that the specific resulting injury was not intended. Citing *Cowan* favorably, it found that coverage under the exclusionary clause was afforded "where the injury was the unintended result of an intentional act."

Applying this construction to the exclusionary clause in Johnson's homeowner's insurance policy, I cannot say that the trial court erred in finding that, even though Johnson did intend to shoot the gun, he acted in an honest belief that he was protecting himself and his property. In declaring that coverage did exist, the trial court found that Johnson sought only to defend himself, giving no real thought to the consequences of his defensive measures. These findings were not against the manifest weight of the evidence. Thus, although Johnson's belief may have been unreasonable and his behavior reckless, it cannot be said that he intended or expected the specific bodily injury which resulted. Because his conduct did not fall within the language of exclusion, it should be covered by the policy. Accordingly, I would affirm the trial judge on that point.

Likewise, I agree with the decision in favor of Gerald Wilson on his counterclaim against Bay State. Bay State exhibited bad faith in refusing to settle within the policy limits. It is undisputed that the insurance company recognized the likelihood of a judgment being entered against its insured. It is also undisputed that the company knew the judgment would be substantial. The injuries sustained by Wilson were severe and permanent. The record also shows that Bay State received a copy of *Cowan*, along with advice from local counsel as to its ramifications. In view of these facts, I agree with the trial judge who found, "at the very least, Bay State was negligent in its refusal to settle within the policy limits."

Bay State argues that it had no obligation to settle a suit in which it consistently denied coverage. It insists that it fulfilled its contractual obligation of good faith simply by defending Johnson in the civil suit.

I note that in *Thornton* the supreme court specifically outlawed the insurer's participation in litigation where the potential for ethical and moral conflicts arises:

> "[W]hen there is a conflict of interests, as in the present case, the insurer should not be obligated *or permitted* to participate

in the defense of the case." (Emphasis added.) (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 152.)

Because, as this case amply demonstrates, a conflict of interest often results in prejudice to the insured, the best course of action is for insurance company counsel to control the declaratory judgment action only, not the actual civil litigation against its insured. If it controls the civil litigation by furnishing its own counsel, an insurer increases the likelihood of prejudice to the insured. It should arrange for the policyholder to retain private counsel to manage the civil suit, with the understanding that, if the declaratory judgment action determines that coverage exists, all costs incurred in defending the prior civil suit will be reimbursed. (See *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 198-99.) As the *Thornton* court said: "[I]ts [the insurance company's] obligation to provide a defense should be satisfied by reimbursing the insured for the costs of the defense." *Thornton v. Paul* (1978), 74 Ill. 2d 132, 152.

Bay State's decision to participate in the defense of its insured was made in direct contravention to the principles set out in *Thornton*. Further, Bay State's refusal to settle the case for the policy limits served to prolong the litigation and increase the risk to the insured. As the court said in *Brown v. State Farm Mutual Automobile Insurance Association* (1971), 1 Ill. App. 3d 47, 51: "When the suit is in excess of the policy the insurer may, by deciding to continue litigation, expose the insured to a far greater risk than it takes." Here, Bay State exposed Johnson to far greater risk than that to which it exposed itself. Thus, it is my opinion that Bay State exhibited bad faith by refusing to settle within the policy limits, and thus it should be liable for the entire $100,000 civil judgment entered against Johnson. *Scroggins v. Allstate Insurance Co.* (1979), 74 Ill. App. 3d 1027, 1030.

Consequently, I would affirm the judgment of the circuit court of Madison County.