**COUNTRY MUTUAL INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**Alvina J. DUNCAN, Special Administrator for Charles Hartzell, Deceased, and Clarence Lindhorst, Defendants-Appellees.**

**No. 85–2572.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 25, 1986.

Decided July 1, 1986.

Cornelius Thomas Ducey, Jr., Ducey, Feder & Ducey, Ltd., Belleville, Ill., for plaintiff-appellant.

Mark R. Osland, Crowder & Scoggins, Ltd., Columbia, Ill., for defendants-appellees.

Before FLAUM and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

FLAUM, Circuit Judge.

Country Mutual Insurance comes before this court following an unsuccessful attempt to rid itself of its alleged contractual obligation to defend Clarence Lindhorst from a wrongful death action brought by the estate of a man Lindhorst was convicted of murdering. Country Mutual disputes whether as a matter of law, or under the particular facts of this case, a person who pleads guilty to voluntary manslaughter can be found to have acted "unintentionally" within the meaning of an insurance contract. It is Country Mutual's contention that the criminal conviction collaterally estops Lindhorst from claiming in a subsequent civil action that he did not act intentionally. Under the law of Illinois, the law that we, sitting in diversity, must adhere to, Lindhorst's guilty plea would not be given preclusive effect and Country Mutual has not otherwise convinced us that the jury verdict should be disturbed.

## I.

This case arises out of a macabre drama that was played out in the pre-dawn hours of March 7, 1980 in the town of Columbia, Illinois. On the night of March 6 Clarence Lindhorst went out with no intention of returning home until the next day. His wife, Desiree, also had plans for the evening with an old high school friend, Charles Hartzell, the eventual victim. Clarence abandoned his plans and returned home at approximately 1:00 a.m. At 7:00 a.m. Clarence, who was asleep in the upstairs bedroom, awoke only to be startled by noises he heard coming from downstairs. Convinced that a burglar was downstairs he quickly dressed and grabbed his rifle. The evidence indicates that Clarence was so agitated by the threat of a break-in that he lost control of his bodily functions. He then preceded downstairs in search of the source of the early morning noises.

Clarence explored the first floor of his home but was unable to find any evidence of entry. Turning a corner he came upon the extra bedroom where he saw his wife in the bed sleeping alongside Charles Hartzell. Almost instantaneously Clarence raised the rifle to his waist and from approximately eight feet away he fatally shot Desiree's companion. Immediately after pulling the trigger Clarence went into a state of shock, unable to do anything but stare at the body.

According to the record Desiree, who was awakened by the shot, expressed surprise to find Clarence home and inquired about the location of his van. Ironically it is the van that set the wheels of this tragedy into motion. It was Clarence's habit to park the van outside, but because he had washed it earlier in the day Clarence put the van in the garage for the night. Thus, Desiree was presumably unaware that her husband was home. Clarence was, apparently, too agitated to respond to her questions about the location of the van leading her to conclude that the vehicle was stolen. She then left the room to call the police in order to report the theft of the van. Only upon her return did she acknowledge that a

man had been shot by turning to Clarence and saying "[Y]ou shot Charlie." At this point Clarence regained enough of his wits to phone the police to inform them of the shooting and to turn himself in.

Although he was charged with murder, Clarence entered into negotiations with the prosecutor resulting in the entry of a guilty plea to one count of voluntary manslaughter. He received a sentence of 60 days in jail on a work release program and four years probation.

On March 4, 1982 Alvina J. Duncan, the special administrator for Charles Hartzell, filed a wrongful death suit against Clarence Lindhorst. In response Clarence made a demand upon Country Mutual to defend and indemnify him under a homeowner's insurance policy, which provided that:

> We promise to pay on behalf of an insured for damages resulting from bodily injury or property damage caused by an occurrence, . . .

The term "occurrence" was defined as:

> . . . an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage.

The policy's exclusions included:

> Liability and Medical Payments, Coverages A & B, does not apply to bodily injury or property damage:
>
> 1. Caused intentionally by or at the direction of an insured.

Country Mutual took the position that the first exclusion precluded any liability on its part to Clarence and sought declaratory relief to that effect in federal district court.

The district court refused to accept the insurance company's contention that the plea of guilty to voluntary manslaughter estopped Clarence from denying the intentionality of his actions. The conviction was admitted into evidence along with extensive expert and lay testimony about Clarence's psychological state before, during, and after the tragedy. The case was submitted to the jury for the limited purpose of determining intent and a verdict was returned

finding that Clarence had not acted "intentionally." The jury apparently found the defense's claim of irresistible impulse convincing. Based on this finding the district judge concluded that Country Mutual was obligated under the insurance contract to defend and indemnify Clarence Lindhorst.

Country Mutual comes before this court seeking review of three decisions below. First, and foremost, Country Mutual argues that under Illinois law a guilty plea to voluntary manslaughter collaterally estops the defendants from contesting intent, thus entitling the insurance company to summary judgment as a matter of law. Second, the company asserts that the court committed reversible error by failing to give plaintiff's instructions on the elements of voluntary manslaughter and on the issue of insurance coverage. Third, Country Mutual claims that the district judge erred in interpreting the insurance contract as covering these events.

## II.

■ As a preliminary matter Country Mutual's alternative factual argument concerning the sufficiency of the evidence, as opposed to its three "legal" claims enumerated above, can be summarily disposed. Both sides put forth extensive evidence concerning Clarence's psychological make-up, as well as a factual account of the fateful evening and subsequent developments, including the plea of guilty to one count of voluntary manslaughter. Lacking any special insight into the workings of the human mind that was not possessed by the jury, this court, under applicable Illinois law, cannot on this record definitively determine that Country Mutual should have received a directed verdict on the issue of intent. *See Kuziw v. Lake Engineering Co.,* 586 F.2d 33, 35 (7th Cir.1978) (federal court sitting in diversity where Illinois law governs should follow standard for directed verdicts and judgments notwithstanding the verdict set out in *Pedrick v. Peoria & Eastern Railroad,* 37 Ill.2d 494, 510, 229 N.E.2d 504, 513–14 (1962) ("In our judgment verdicts ought to be directed and

judgments *n.o.v.* entered only in those cases in which all evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.")). Thus, in the absence of a legal barrier to the submission of the intent issue to the jury, the verdict of lack of intent will not be disturbed.

### The Collateral Estoppel Effect of the Guilty Plea

■ As a federal court sitting in diversity on a case arising in Illinois we are bound under the doctrine of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to apply the law of Illinois. *See Ace Cycle World, Inc. v. American Honda Motor Co.,* 788 F.2d 1225, 1228 (7th Cir. April 11, 1986). Country Mutual attempts to characterize this case as one of those tough situations where a federal court must determine the law of a state in the absence of guidance from the state. In fact they have suggested that we certify the collateral estoppel effect issue to the Illinois Supreme Court. Despite Country Mutual's best efforts to paint a picture of confusion and error, the law in Illinois regarding the preclusive effects of guilty pleas in civil actions is fairly clear and the district judge acted in accord with that law.

The Illinois Supreme Court in *Thornton v. Paul,* 74 Ill.2d 132, 23 Ill.Dec. 541, 548–49, 384 N.E.2d 335, 342–43 (1979), held that proof of a criminal conviction is admissible in a subsequent civil action as *prima facie* evidence of the facts underlying the conviction. In *Thornton* the court specifically distinguished the use of criminal convictions from the collateral use of guilty pleas. Country Mutual seizes this statement as evidence that the scope of the civil use of guilty pleas is an open question in Illinois. In reality it appears that the opposite is true; *Thornton* dealt with the "open issue," the use of convictions. The use of guilty pleas was well-established prior to that decision.

■ While Country Mutual correctly asserts that there is no Illinois Supreme Court

ruling explicitly on the admissibility of guilty pleas, a substantial number of Illinois appellate courts and federal courts sitting in diversity have held that a guilty plea is introduced into evidence as an admission against interest. *See Galvan v. Torres*, 8 Ill.App.2d 227, 131 N.E.2d 367 (1956). *See also Brown v. Green*, 738 F.2d 202, 206 (7th Cir.1984); *Waldron v. Hardwick*, 406 F.2d 86, 90 (7th Cir.1969); *People v. Powell*, 107 Ill.App.3d 418, 63 Ill.Dec. 336, 338, 437 N.E.2d 1258, 1260 (1982); *Hartigan v. Robertson*, 87 Ill.App.3d 732, 42 Ill.Dec. 751, 756, 409 N.E.2d 366, 371 (1980); *Cogdill v. Durham*, 43 Ill.App.3d 940, 3 Ill.Dec. 6, 8, 358 N.E.2d 6, 8 (1976); *Smith v. Andrews*, 54 Ill.App.2d 51, 203 N.E.2d 160, 163–64 (1964).[1] A guilty plea, like any other admission, is not necessarily conclusive as to the facts underlying the plea but is subject to explanation by the declarant. *See Powell*, 63 Ill.Dec. at 337–38, 437 N.E.2d at 1259–60; *Smith*, 203 N.E.2d at 163–64. *See generally* 4 J.H. Wigmore, *Wigmore on Evidence* § 1066(4) (Chadbourn Revision 1972). This was exactly what happened in the present case. Clarence's guilty plea was introduced into evidence and the jury accepted his explanation of the facts underlying the plea. Assuming that Country Mutual is correct in asserting that a plea of guilty to voluntary manslaughter is an admission of intent, the weight given this admission will vary with the nature of the underlying facts, and the circumstances of the plea. The bizarre nature of the incident in the present case precludes us from finding that the facts coupled with the admission are not susceptible of any description other than intentional. *Cf. Bay State Insurance Co. v. Wilson*, 108 Ill.App.3d 1096, 64 Ill.Dec. 579, 580, 440 N.E.2d 131, 132 (1982) (facts can impart more weight to *prima facie* case of intent under *Thornton v. Paul*). Given the

highly fact-specific nature of the inquiry required in this case under Illinois law, we decline Country Mutual's invitation to invade the province of the jury.

### The Scope of the Policy Exclusion

Country Mutual argues, albeit cryptically, that the homeowners policy cannot be construed to cover the facts of this case. The limitation of coverage to "occurrences" did not contemplate, according to the insurance company, the inclusion of shootings, such as the one that occurred in this case. Pursuant to this argument it is also claimed that the district judge wrongfully failed to instruct the jury about the scope of the policy. Country Mutual proposed a jury instruction containing the policy's description of coverage and exclusion. Under this instruction the jury would have to determine whether the event in question was an occurrence, as well as having to determine whether the act was intentional.

Once again, by conveniently ignoring the clear language of Illinois decisions, Country Mutual attempts to structure arguments void of legal support. The case of *Aetna Casualty & Surety Co. v. Freyer*, 89 Ill.App.3d 617, 44 Ill.Dec. 791, 793, 411 N.E.2d 1157, 1159 (1980) is quite instructive on the point raised by the insurance company in the present case.

> The policy insures against liability caused by an occurrence.... This extension of coverage from "accidents" to "occurrences" has been considered to broaden coverage, and eliminates the need for an exact finding as to the cause of damages so long as they are neither expected nor intended from the standpoint of the insured. (7A Appleman, *Insurance Law and Practice* (Berdal ed.) (§ 4493.))

[1] One Illinois appellate court has taken the position that a guilty plea introduced in a civil case is a *prima facie* evidence of the facts underlying the plea. *O'Dell v. Dowd*, 102 Ill.App.3d 189, 57 Ill.Dec. 650, 429 N.E.2d 548 (1981). Whether *O'Dell* is the emerging trend in Illinois law is of little consequence to Country Mutual because under either treatment of the plea we would still find that sufficient contrary testimony existed to justify sending the case to the jury. Given that the result in this case would be the same there is no reason for a federal court to decide whether Illinois should adhere to its traditional "admission" approach or extend the *Thornton prima facie* rule to guilty pleas.

*Id.* 44 Ill.Dec. at 793, 411 N.E.2d at 1159. The policy issued by Country Mutual, unlike the policy in *Freyer*, only excluded intentional acts. (The exclusion at issue in *Freyer* was broadened by the removal of "expected" acts from the scope of coverage.) Under the policy at issue a finding that the action was unintentional meant, by definition, that the action was an occurrence. Instructing the jury to find whether an "occurrence" had taken place would serve no purpose except the creation of potential confusion among the jurors who may not have realized that the issue of intent and the issue of occurrence were in fact one and the same. Furthermore, since construction of the operative provisions of the insurance contract is a matter of law, there would be no reason for the jury to be given free rein to construe the instrument. The only factual issue was Clarence's intent and the district court properly limited the jury's inquiry to this aspect of the case.

Nor can it be said, for the reasons discussed above, that the district court erred in its construction of the contract. Under the terms of the contract and applicable Illinois law this is a one issue case: did Clarence Lindhorst have the mental capacity, at the time of the shooting, to form the intent to injure Charles Hartzell. *See Aetna Casualty & Surety Co. v. Dichtl*, 78 Ill.App.3d 970, 34 Ill.Dec. 759, 763–65, 398 N.E.2d 582, 586–88 (1979). The jury was so instructed and had sufficient evidence upon which to base a negative answer. Following this finding the district court was compelled to find that an "occurrence" within the meaning of the contract had transpired.

### The Instruction on Voluntary Manslaughter

Country Mutual's last asserted error is the most distressing because of what it reveals about the insurance company's handling of this case. Country Mutual claims that the district court's failure to instruct the jury on voluntary manslaughter prevented the jury from fully appreciating the weight to be given the guilty plea as an admission of intent. There is undoubtedly

some truth to this argument and it would be of some concern had Country Mutual preserved its right to object to the instruction.

■ The record indicates that Country Mutual proposed an instruction which was little more than a definition of voluntary manslaughter excerpted from an Illinois Supreme Court opinion. The district judge was uncomfortable with the proposed instruction. His comments indicate that he correctly believed the guilty plea was an admission and that what should be read to the jury was what was admitted to, namely the information. He also expressed a willingness to present the jury with a text of the voluntary manslaughter statute in accordance with local rules following the Illinois Pattern Jury Instructions. Notwithstanding the court's offer to submit a revised instruction, counsel for the insurance company clung rigidly to his proposed instruction and refused to propose or accept any alternative. This type of uncooperative conduct in the framing of instructions does not serve the best interests of the court or the parties.

■ In the present case Country Mutual cannot now object to the lack of *any* instruction on the elements of voluntary manslaughter since it took the position that it did not want an instruction if it did not get the one it proffered. Country Mutual found itself, because of the offers from the bench, in the unusual situation of not having an outright denial of their instruction but of having to enter into a dialogue with the court about the content of an instruction. Country Mutual could have obtained a voluntary manslaughter instruction and retained its objections by agreeing to the court's proposals while preserving its objections to the content. Under the circumstances of this case it was the insurance company and not the court that prevented *any* voluntary manslaughter instruction from getting before the jury.

It would appear that Country Mutual could argue that the court wrongly rejected its specific instruction. To allow this, how-

ever, would allow a party to manufacture error. It is difficult to analyze the language of a specific instruction in a vacuum. Even assuming there was nothing objectionable about Country Mutual's instruction, it is impossible to state that the alternative instruction that would have been given *but for* the company's rigid position would not have been adequate. This is exactly what Country Mutual would like us to do, thus giving a litigant in a civil case the power, in a situation where the court proposes an alternative instruction, to create potential error by destroying any middle ground between his proposed instruction and no instruction at all. If the judge believes that the proposed instruction is not adequate he would have no choice but to reject the instruction. If this determination were erroneous this court would have to reverse even though the party before it effectively precluded the district court from propounding an acceptable alternative. This cannot be the law. When a party takes a hardline approach when faced with an accommodating court the litigant must live with the consequences of its tactical decision. This court will not minimize the "down side risk" by providing review for potential errors which, in the absence of the litigant's rigidity, may have been avoided through alternative instructions. Thus, we hold that by failing to accommodate the district court while preserving its objections, Country Mutual waived its right to object to the failure to give its proposed voluntary manslaughter instruction.

### III.

For the foregoing reasons the decision of the district court is affirmed. Costs of this appeal shall be borne by the appellant.