**Ronald A. BROWN, Plaintiff-Appellee,**

**v.**

**Albert GREEN, Defendant-Appellant.**

**No. 83–2619.**

United States Court of Appeals, Seventh Circuit.

Argued March 26, 1984.

Decided June 25, 1984.

Robert A. Habib, Law Office of Gerald C. Bender, Gerald C. Bender, Chicago, Ill., for plaintiff-appellee.

Cary Schwimmer, Ancel, Glink, Diamond, Murphy & Cope, Chicago, Ill., for defendant-appellant.

Before BAUER, WOOD and ESCHBACH, Circuit Judges.

failure of the defendant's counsel to inform her of her possible defense.

HARLINGTON WOOD, Jr., Circuit Judge.

Defendant-appellant Albert Green, an officer of the Village of Maywood Police Department in Maywood, Illinois, appeals from an order of the district court entering judgment on the jury's verdict against him for using excessive force in arresting plaintiff-appellee Ronald Brown in violation of 42 U.S.C. § 1983. The jury awarded Brown $21,500 compensatory damages and $45,000 punitive damages. Green contends that the district court erred (1) in excluding portions of the state court criminal record against Brown arising out of the same incident, and (2) in allowing Brown to amend his complaint to include a request for punitive damages after the close of all the evidence. Because we believe Green's first assignment of error is meritorious, we reverse and remand the case for a new trial. We therefore need not address Green's second assignment of error.

## I.

On July 9, 1980, shortly after midnight, three officers from the Maywood Police Department responded to a radio call about a disturbance at Brown's mother's house. The disturbance apparently stemmed from an argument between Brown and his brother about the disappearance of Brown's barbecue dinner following the breakup of a small wedding party (the party had been given by Brown's mother for Brown and his wife following their wedding the previous afternoon). What happened next is disputed. Brown alleged that after Green and the two other officers arrived, they confronted him and beat him without provocation. Green and the other officers denied this allegation. They claimed that Brown had physically resisted arrest and that in the process Brown had struck Green; they asserted that at no time had they used excessive force in executing the arrest or at the station house.

Brown was subsequently charged in state court with criminal battery and resisting arrest. The battery complaint stated that Brown knowingly and without legal justification struck Green with his fist about Green's body, causing Green bodily harm. The resisting arrest complaint asserted that Brown, knowing Green to be a police officer engaged in the performance of his official duties, pushed, shoved, and punched Green after Brown had been placed under arrest. On September 17, 1980, following a bench trial, Brown was convicted of both criminal charges and sentenced to one year of probation. Brown subsequently moved for a new trial. Some time after the motion was filed, Brown's attorney (who also represented Brown in the section 1983 action) made an appearance before the state court and asked that the new trial motion be granted or, in the alternative, that the court change Brown's probation sentence to a disposition of supervision. Following a discussion between the court and Brown's attorney, *see infra* note 3, the court agreed to alter Brown's probation sentence; the court vacated its previous order and changed the sentence to a disposition of supervision.[1] Brown there-

---

1. The relevant portions of the Illinois statutes pertaining to supervision provide:

 (c) The court may, upon a plea of guilty or a stipulation by the defendant of the facts supporting the charge or a finding of guilt, defer further proceedings and the imposition of a sentence, and enter an order for supervision of the defendant if the defendant is not charged with a felony and having regard for the circumstances of the offense, and the history, character and condition of the offender, and the court is of the opinion that:

 (1) the offender is not likely to commit further crimes;

 (2) the defendant and the public would be best served if the defendant were not to receive a criminal record; and

 (3) in the best interests of justice an order of supervision is more appropriate than a sentence otherwise permitted under this Code.
 Ill.Rev.Stat. ch. 38, § 1005–6–1(c).

 … "Supervision" means a disposition of conditional and revocable release without probationary supervision, but under such conditions and reporting requirements as are imposed by the court, at the successful conclusion of which disposition the defendant is discharged and a judgment dismissing the charges is entered.
 Ill.Rev.Stat. ch. 38, § 1005–1–21.

after satisfactorily completed the supervision and it was terminated on September 16, 1981. Under the Illinois statute governing supervision, the state court was then required to enter a judgment dismissing the charges, which it apparently did.

On March 15, 1982, Brown filed a section 1983 civil rights action in federal district court, alleging that Green and the other two officers violated Brown's fourteenth amendment rights by using excessive force in arresting him on July 9, 1980. Just before trial commenced on June 7, 1983, Brown's counsel brought a motion *in limine* to bar Green from using during trial the certified record pertaining to the state criminal proceedings. A lengthy discussion followed about the significance of the state court order of February 3, 1981, which vacated the state court's previous order and imposed supervision in place of probation. In the course of that discussion, Brown's counsel, who had argued before the state court judge, told the district court, when asked whether the convictions were vacated because Brown had successfully completed his probation:

No, we asked the Judge to reconsider. The Judge re-weighed all the evidence. The Judge changed over his whole testimony. This man never was convicted for anything, and he said that supervision should be made available to this man.

The district court then asked Brown's counsel whether there was a transcript of this colloquy, to which counsel replied that he could not remember. Although counsel for Green pointed out that Brown was sentenced to a period of supervision after the probation order had been vacated, the district court stated that, in its understanding, this did not necessarily mean that the state court had made a finding of guilt. It then granted Brown's motion *in limine*.

At the beginning of the second day of trial, counsel for Green again raised the matter about Brown's state court conviction. Green's counsel argued that he was not interested in using the fact of Brown's conviction *per se*, but wanted to use the record of the state court complaint and

proceedings to estop Brown from testifying that he never struck Green. Counsel for Green explained that in order for a court to grant supervision in Illinois, the accused must have pled guilty or stipulated to the facts supporting the charge, or there must have been a finding of guilt. Because of this requirement, Green's counsel argued that the state criminal proceeding conclusively established the facts as set forth in the complaint; he stated, "[w]e are not seeking, as would be the case if we were trying to impeach, to use a record of conviction, and that is a distinction which we think has to be made."

In deciding to stay with its original order, the district court stated that no facts had been presented to it regarding the vacating of the conviction except for the representations made by counsel for Brown:

Mr. Bender [counsel for Brown] made a representation yesterday and correct me if I am wrong, Mr. Bender—to the effect that [the vacation of the original order] was done by virtue of a further factual argument made to the Judge, who then reconsidered his original factual finding and vacated the conviction because he was persuaded that he had originally taken the wrong view of the merits.

Mr. Bender: That is correct, your Honor.

The Court: Now, that is what you are representing to the Court—

Mr. Bender: That is right, your Honor.

The Court: —as an officer of the Court?

Mr. Bender: Your Honor, I even told the Court that I even followed the Judge around from circuit to circuit.

The Court: The answer to my question is yes?

Mr. Bender: Yes, your Honor.

The district court went on to conclude:

[W]hat I have before me is an official certified Court record indicating that that conviction was vacated. On that basis and on the basis of your [Green's counsel's] lack of any evidentiary presen-

tation concerning the circumstances of the vacation and on the basis of Mr. Bender's representation, based upon his own personal knowledge as to how it occurred ... I am going to stand by my original ruling that there shall be no mention of this conviction of September 17, 1980, and there will be no collateral estoppel on account of that conviction.

After Green was found liable pursuant to section 1983 for using excessive force in executing Brown's arrest, he brought a motion for a new trial. In the motion, Green again asserted that because supervision can be given only if the defendant was found guilty, stipulated to the facts underlying the charges, or pled guilty, the district court had erred in "preclud[ing] the introduction of the record of the criminal proceedings against [Brown] which establish [sic], through admission by [Brown] or through collateral estoppel, that [Brown] committed a criminal battery against Officer Green during the incident which was the basis of this lawsuit." This error allegedly resulted in Green being deprived of a fair trial.

The district court rejected Green's motion for a new trial for two reasons. First, the district court stated that it was "not clear that the state court judge believed it was necessary to find plaintiff guilty of the offense in order to place him on supervision," and that there appeared "to be an inconsistency between vacation of the conviction on the one hand and [Green's] theory of what the supervision implies, on the other." (Footnote omitted.) Second, the district court judge observed that "[u]nless I were to have directed the jury as a matter of law that [Brown] had in fact been guilty of a battery, which [Green] does not suggest now and did not suggest during the

trial, I am unable to see how the jury would have benefitted from knowing that a state court judge found [Brown] had committed a battery (assuming that it [sic] what the 'supervision' means)."

## II.

■ We think the district court erred in excluding the state court records, although it was correct in not giving them preclusive effect. In *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the Supreme Court outlined the role of collateral estoppel in section 1983 actions. In *Allen*, it held that "the history of § 1983 does not in any way suggest that Congress intended to repeal or restrict the traditional doctrine of preclusion." *Id.* at 98, 101 S.Ct. at 417. Although the Court noted that a major purpose behind the enactment of section 1983 was the "grave congressional concern that the state courts had been deficient in protecting federal rights," *id.* at 98–99, 101 S.Ct. at 417, the Court nevertheless concluded that "much clearer support than this would be required to hold that § 1738 and the traditional rules of preclusion are not applicable to § 1983 suits," *id.* at 99, 101 S.Ct. at 417. Section 1738 of Title 28, the full faith and credit statute,[2] imposes on the federal courts the obligation to give state court judgments the same effect as they would have in the courts of the state rendering them.

The Court subsequently applied the reasoning in *Allen* to encompass claim preclusion in a Title VII setting. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). *Kremer* made clear that the preclusive effect of state court actions stems from 28 U.S.C. § 1738, and that federal courts must

---

**2.** Section 1738 states in relevant part:

The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court with the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738.

apply a state's preclusion rules to a state court's decision unless the federal statute being sued under explicitly provides otherwise. *Id.* at 481–82, 102 S.Ct. at 1897. Based on *Allen* and *Kremer* then, and most recently, *Haring v. Prosise*, 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983), the preclusive effect of the Illinois criminal court judgment here is to be determined first by scrutinizing Illinois law. Specifically, we must determine what preclusive effect Illinois courts would give in a civil proceeding to the facts underlying a criminal conviction when the sentence accompanying the conviction was changed to a disposition of supervision and the supervision was subsequently successfully terminated. *See id.* 103 S.Ct. at 2373; *Wehling v. Columbia Broadcasting System*, 721 F.2d 506, 508–09 (5th Cir.1983); *Loudermill v. Cleveland Board of Education*, 721 F.2d 550, 557 (6th Cir.1983); *Lee v. Winston*, 717 F.2d 888, 894 (4th Cir.1983).

 The Illinois courts have developed a special rule regarding the use in civil proceedings of facts underlying a criminal conviction. Rather than granting the preclusive effect associated with traditional applications of the doctrine of collateral estoppel, this rule, first articulated in *Smith v. Andrews*, 54 Ill.App.2d 51, 203 N.E.2d 160 (2d Dist.1964) (overruling *Gould v. Country Mutual Casualty Co.*, 37 Ill.App.2d 265, 185 N.E.2d 603 (2d Dist. 1962)), and ratified by the Illinois Supreme Court in *Thornton v. Paul*, 74 Ill.2d 132, 23 Ill.Dec. 541, 384 N.E.2d 335 (1978) and *Bay State Insurance Co. v. Wilson*, 96 Ill.2d 487, 71 Ill.Dec. 726, 728, 451 N.E.2d 880, 882 (1983), provides that evidence of a prior criminal conviction is admissible in a civil proceeding as *prima facie* evidence of the facts upon which the conviction is based if those facts are relevant to some issue involved in the civil proceeding. The *Thornton* court stated that "[t]his approach preserves the opportunity to rebut the factual basis of the conviction insofar as those facts are applicable to the civil proceedings." 23 Ill.Dec. at 549, 384 N.E.2d at 343. The rule apparently applies only when the criminal conviction has been made on the merits, since the court in *Thornton* specifically noted that it was not addressing situations in which the defendant entered a guilty plea in the criminal case. *Id.* In that situation, the Illinois courts have traditionally treated the guilty plea as an admission by the defendant of the facts alleged in the complaint that may be used against the defendant in a subsequent proceeding. *E.g.*, *Smith v. Andrews*, 203 N.E.2d at 163–64; *but see O'Dell v. Dowd*, 102 Ill.App.3d 189, 57 Ill. Dec. 650, 429 N.E.2d 548 (4th Dist.1981) (conviction of defendant entered upon guilty plea for driving too fast for conditions should have been admitted, under *Thornton*, in civil negligence case as *prima facie* evidence that defendant drove too fast for the conditions). In addition, the *Thornton* court emphasized that for the *prima facie* rule to apply, the criminal proceedings must have been "of sufficiently serious import" to ensure the reliability of the conviction, 23 Ill.Dec. at 548, 384 N.E.2d at 342; *see also Smith v. Andrews*, 203 N.E.2d at 165–66.

### III.

 We believe that application of the *Thornton* rule to the present case should have entitled Green to introduce the record of the state criminal proceedings as *prima facie* evidence that Brown struck Green on July 9, 1980. The Illinois supervision statute, as interpreted by the Illinois Supreme Court, provides that an order for supervision may be imposed only when one of the three conditions listed in the statute exists: when the defendant (1) has pled guilty to the charges, (2) has stipulated to the facts supporting the charges, or (3) was found guilty of the offense charged. *People v. Boykin*, 94 Ill.2d 138, 68 Ill.Dec. 321, 445 N.E.2d 1174 (1983) (interpreting Ill.Rev. Stat. ch. 38, § 1005–6–1(c)). Thus, for the state court properly to have entered the supervision order here, one of these conditions had to exist. In fact, the state court docket sheet indicates that Brown pled not guilty to the battery charge but was *found guilty* (recorded as "FG") and sentenced to

one year of probation. In order to enter the supervision order, then, the state court necessarily ratified its finding of guilt that Brown had committed the acts as alleged in the complaint, namely, that Brown struck Green on July 9, 1980. Without the supervision order, perhaps the district court would have been right in excluding the state record, because it was otherwise unclear as to why the state court's previous order was vacated. Here, however, the vacation of the previous order was entered contemporaneously with an order of supervision, so that the court necessarily was entering the supervision order based on its previous finding of guilt on the merits. It seems, therefore, that the state court was not so much vacating the conviction as vacating the previous sentence, and in accordance with the supervision statute was "defer[ring] further proceedings and the imposition of sentence and enter[ing] an order of supervision," Ill.Rev.Stat. ch. 38, § 1005–6–1, based on its finding of guilt.

In any event, a fair reading of the colloquy between the state court and Brown's attorney at the time the probation sentence was vacated and the supervision order was entered indicates that the change was not made on the merits.[3] Thus, even if the state court had been under the mistaken impression that it could have granted supervision without a finding of guilt (*Boykin*, decided subsequently, necessarily would have prohibited a change to supervision without there having been a finding of guilt here, since the other two conditions under which supervision may be imposed did not exist; *see supra* note 1), the record suggests that it did *not* do so in this case.

Brown argues that the effect of the supervision order need not be considered be-

---

**3.** In deciding to exclude the state court criminal records from the section 1983 action, the district court relied heavily on the representation made by Brown's counsel that the vacation of the state court's original order and the imposition of the supervision was made on the merits after further factual findings. A review of the transcript of the proceedings (not made available to the district court) in which the state court changed Brown's probation sentence to a disposition of supervision, however, indicates that the change was not made on the merits:

MR. BENDER [counsel for Brown]: ... I would like the Court to do one of two things: either grant us a new trial, but more preferably, if the Court would, in its discretion alter the sentencing from probation to supervision so that the people, they never had a record in their whole lives, don't have to stay the rest of their lives with having that type of record, and most of the probation has already been completed.

THE COURT: What does the State say?

MR. FREEDMAN [for the State of Illinois]: ... The people still maintain that the Court should maintain its ruling, based on the fact that the Court made certain evidentiary rulings during the trial which the Court made after hearing all the facts, ruling in its wisdom on evidence, and after Counsel Bender's full and complete argument in mitigation, this Court did rule on the disposition on the sentence which it felt fair at that time at the end of the State's case and from the State's arguments in aggravation, your Honor.

MR. BENDER· Your Honor, I could—

THE COURT: Well, the only thing is that I just might mind here, I mean, when I make a decision I really don't like to change it. I agree with you, but as I remember the facts there was really not serious injury to the police officer. I mean, if there were a bruise and bruises or marks and blow marks, they would have gone to jail.

MR. FREEDMAN: That's what the State wanted at the end of the trial.

THE COURT: The only thing that bothers me, you know, the general public, not all of them but some people that are disrespectful to the police officers who are attempting to enforce the law. Sure, people make mistakes. We make mistakes too, as Judges. That's why we have reviewing courts, higher courts to review our decisions. But there's so much of this going on, even on traffic violations, speeding, et cetera. They push the officers; they call them names. I wouldn't be a police officer if they paid fifty thousand dollars for one. A policeman leaves his home. He doesn't know if he is going to come back alive. Then he may leave a widow and a bunch of young children. Who knows? The public ought to be more respectful and try to do better, you know. I don't want to say there is a jungle out there, but that is the trouble, we almost have a jungle.

. . . .

Well, I will tell you. I think their background, Mr. Freedman, is as I recall it, there was some small issue. I will reduce it to supervision.

MR. BENDER: Thank you, your Honor.

THE COURT: They got married. It was their wedding night. . . .

cause his conviction was in any event erased after he successfully concluded his supervision. We disagree. Although the supervision statute required that after successful conclusion of his supervision the charges against Brown be dismissed and his conviction erased for *some* purposes, this was not true for *all* purposes. The relevant statute provides:

> (e) At the conclusion of the period of supervision, if the court determines that the defendant has successfully complied with all of the conditions of supervision, the court shall discharge the defendant and enter a judgment dismissing the charges.
>
> (f) Discharge and dismissal upon a successful conclusion of a disposition of supervision shall be deemed without adjudication of guilt and shall not be termed a conviction *for purposes of disqualification or disabilities* imposed by law upon conviction of a crime....

Ill.Rev.Stat. ch. 38, § 1005–6–3.1(e) & (f). Although the supervision statute eliminates the record of criminality and concomitant opprobrium associated with a criminal conviction as to those individuals found eligible for and who successfully complete supervision, the statute does not denigrate the factual findings underpinning the criminal proceedings themselves. We fail to see how the supervision statute or the policy behind it prohibits the use of the state court record here to establish the state court's determination that Brown committed a battery on Green. Although charges against Brown were later dismissed incident to the conclusion of his supervision, that dismissal was not on the

merits and in no way can be said to impugn the factual findings made by the state court necessary to its original judgment.[4] *Cf. People v. Oswald,* 106 Ill.App.3d 645, 62 Ill.Dec. 397, 435 N.E.2d 1369 (2d Dist. 1982) (dismissal of charges pursuant to supervision statute is not a judgment of acquittal for purposes of appeal; factual elements of offenses charged were resolved against defendants and discharges were on grounds unrelated to defendants' guilt and despite the evidence of their guilt); *Stanger v. Felix,* 97 Ill.App.3d 585, 52 Ill.Dec. 933, 422 N.E.2d 1142 (1st Dist.1981) (plaintiff's malicious prosecution action was not supported by fact that plaintiff had been placed on supervision in the criminal case, since supervision required trial court to make findings indicative of guilt, not innocence).

The supervision order entered concomitant to the finding of guilt and the fact that the criminal proceedings were for a serious crime for which Brown was represented by counsel makes application of the *Thornton* rule appropriate here.[5] Accordingly, we see no reason why the state court records should not have been admitted in the section 1983 action as *prima facie* evidence that Brown struck Green on July 9, 1980. *See Thornton,* 23 Ill.Dec. at 549, 384 N.E.2d at 343. Although the fact that Brown struck Green here, even if unrebutted, would not have been dispositive of this case (since the jury could still have found that Green used excessive force in executing the arrest even though Brown struck him), the evidence was relevant and should have been admitted. *See Bay State Insurance Co. v. Wilson,* 71 Ill.Dec. at 782, 451

---

**4.** The Illinois cases applying the *Thornton prima facie* rule involved prior criminal *convictions* on the merits that gave rise to the inference that the conduct underlying the convictions occurred. Although technically the final judgment in this case was not a conviction, there was a finding of guilt on the merits that was never subsequently undermined. There is no reason for us to suppose, therefore, that the Illinois courts would not give the facts necessarily determined in reaching the state court's finding of guilt here the same *prima facie* weight given to the facts necessarily determined in con-

nection with a traditional judgment of conviction.

**5.** Brown has not asserted, and we do not find, that the state criminal proceedings did not satisfy the minimal due process requirements of the fourteenth amendment or that Brown did not have a full and fair opportunity to litigate the state criminal charge. In addition, no other conditions exist that would make inappropriate the admission of the state court record here. *See Haring v. Prosise,* 462 U.S. 306, 103 S.Ct. 2368, 2373 & n. 7, 76 L.Ed.2d 595 (1983).

N.E.2d at 882; *O'Dell v. Dowd,* 57 Ill.Dec. at 653–54, 429 N.E.2d at 551–52. We cannot agree with the district court that the jury would not have benefitted from knowing that a state court judge had found that Brown had committed a battery in connection with the incident on July 9, 1980. Such a finding supported Green's version of the events and undermined Brown's recollection of what took place, since Brown testified at the section 1983 trial that he had not struck Green. Because we are unconvinced that the excluded evidence would not have influenced the jury, *see United States v. Shackleford,* 738 F.2d 776, 783–84, (7th Cir.1984), we reverse and remand for a new trial.