Adam **RODRIGUEZ**, Plaintiff-Appellant,

v.

David W. **SCHWEIGER** and Roger D. Terry, Defendants-Appellees.

No. 85–1092.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 4, 1985.

Decided July 17, 1986.

Rehearing and Rehearing En Banc Denied Aug. 19, 1986.

Opinion On Reconsideration Oct. 16, 1986.

Robert H. Riley, Schiff Hardin & Waite, Chicago, Ill., for plaintiff-appellant.

Julie Elena Brown, Corp. Counsel, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, POSNER, Circuit Judge, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

Plaintiff Adam Rodriguez brought a civil rights action under 42 U.S.C. § 1983 against Chicago police officers David Schweiger and Roger Terry in the United States District Court for the Northern District of Illinois. After a six-day jury trial a verdict was reached in favor of the defendant police officers. Plaintiff appeals various rulings of the district court pursuant to 28 U.S.C. § 1291. For reasons set forth below, we affirm.

The case arises from a shooting incident which occurred on November 6, 1975 between plaintiff and the defendant police officers. Officer Schweiger testified, and the jury apparently believed, that he entered plaintiff's apartment on the fateful day with plaintiff's girlfriend, a Yvette Velasquez, because earlier that day Velasquez had flagged him down in his patrol vehicle claiming a man had hit her in the head with a gun. Schweiger testified he followed Velasquez into plaintiff's apartment after she had unlocked the door with her own key. At this point plaintiff was observed with a gun in his waistband. Schweiger claims he said "police officers" and "don't go for your gun." (Plaintiff claims Schweiger entered the apartment "without warning or announcement." It is undisputed Schweiger was in plain clothes). Apparently, both plaintiff and Schweiger pulled their guns. At trial it was disputed who drew their gun first and who fired first. Schweiger testified he said "drop the gun" and plaintiff failed to respond. It was then he shot at plaintiff from the hip. Schweiger testified he believed he failed to hit plaintiff because plaintiff did not move after the shot.

Officer Terry, Schweiger's partner, was making a call for backup support on his police radio when he heard the first shot. He had initially entered the apartment with Schweiger, had seen plaintiff's gun and retreated to radio for support. Terry testified he did not see who fired the first shot but returned to plaintiff's apartment quickly after hearing a gunshot. Terry testified he never fired his weapon.

About five to ten seconds after the first shot, Schweiger shot twice more. At this point Schweiger claims plaintiff moved to the bedroom. Schweiger followed and found plaintiff bloodied and on the floor. The jury rejected plaintiff's claim that both officers fired at him after he was wounded and disarmed. The jury also rejected plaintiff's contention that one of the officers put

---

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

a gun to plaintiff's head and threatened to kill him after he had been wounded.

Important for our purposes in deciding this appeal is the fact that plaintiff was charged with attempted murder in the Illinois state courts as a result of this incident. He pled guilty and was sentenced to a four to eight-year term of imprisonment. In plaintiff's subsequent federal § 1983 action a four-count complaint was filed alleging the defendant officers, after arresting him, willfully and maliciously shot him and then pointed a gun to his head and threatened to kill him (Count I). Plaintiff also alleged that the officers deliberately filed false police reports which deprived plaintiff of his rights (Count II) and coerced plaintiff into his guilty plea (Count IV). Finally, plaintiff alleged that police officers failed to follow relevant internal department rules and regulations which resulted in the shooting incident (Count III). Defendants filed a pretrial motion to dismiss Counts II, III and IV of plaintiff's complaint. It was basically granted, however, with the proviso that plaintiff could plead his Count II allegations not as an independent claim for relief, but rather as an additional prayer for relief (as punitive damages) as part of Count I. Count III was also dismissed as a separate Count; however, as with Count II, plaintiff was allowed to advance his Count III allegations in support of this Count I claim. Defendants sought dismissal of Count IV on the grounds that plaintiff was collaterally estopped from asserting defendants filed false police reports. While the judge rejected this argument, he nonetheless dismissed Count IV by ruling in the alternative that plaintiff was collaterally estopped from arguing he was innocent of attempted murder and coerced to plead out to that charge due to the false police reports. It is the district court's ruling on Count IV that forms the basis for plaintiff's main argument on appeal. We shall address that ruling first.

■ Plaintiff claims the district court erred in ruling that his guilty plea in state court to attempted murder collaterally estopped him from arguing the police fired the first shot. Since, arguably, no shots needed to be fired, plaintiff wants to establish the defendants fired the first (unnecessary) shot at the basis of support for his federal § 1983 action. The case law indicates the district court ruled correctly in applying the doctrine of collateral estoppel in this instance. In *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the relationship between § 1983 actions and the doctrine of collateral estoppel was discussed. *Allen* has become a lead case in the discussion of the preclusive effect a state court judgment can have on subsequent federal court actions.[1] The *Allen* court initially reemphasized the importance or deference to be given to 28 U.S.C. § 1738:

> Congress has specifically required all federal courts to give preclusive effect to state court judgments *whenever the courts of the State from which the judgment emerged would do so*:
>
> > "[J]udicial pleadings [of any court of any State] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State...."
> > 28 U.S.C. § 1738 (1976). [Emphasis added.]

*Id.* at 101 S.Ct. 415–16. As for § 1983's relationship to 28 U.S.C. § 1738, the *Allen* court stated:

> ... nothing in the language of § 1983 remotely expresses any congressional intent to contravene the common-law rules of preclusion or to repeal the express statutory requirements of the predecessor of 28 U.S.C. § 1738. Section 1983 creates a new federal cause of action. It says nothing about the preclusive effect of state-court judgments.

---

**1.** Also instructive is *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104

S.Ct. 892, 79 L.Ed.2d 56 (1984).

Moreover, the legislative history of § 1983 does not in any clear way suggest that Congress intended to repeal or restrict the traditional doctrines of preclusion.

\* \* \* \* \* \*

... nothing in the language or legislative history of § 1983 proves any congressional intent to deny binding effect to a state-court judgment or decision when the state court, acting within its proper jurisdiction, has given the parties a full and fair opportunity to litigate federal claims, and thereby has shown itself willing and able to protect federal rights. And nothing in the legislative history of § 1983 reveals any purpose to afford less deference to judgments in state criminal proceedings than to those in state civil proceedings....

Through § 1983, the 42d Congress intended to afford an opportunity for legal and equitable relief in a federal court for certain types of injuries. It is difficult to believe that the drafters of that Act considered it a substitute for a federal writ of habeas corpus, the purpose of which is not to redress civil injury, but to release the applicant from unlawful physical confinement.

*Id.* at 101 S.Ct. 416–20.

The effect the Illinois state courts would have given plaintiff's guilty plea is summarized in *Brown v. Green,* 738 F.2d 202, 206 (7th Cir.1984) where we concluded:

"... the Illinois courts have traditionally treated the guilty plea as an admission by the defendant of the facts alleged in the complaint that may be used against the defendant in a subsequent proceeding." (Citing *Thornton v. Paul,* 74 Ill.2d 132, 23 Ill.Dec. 541, 548, 384 N.E.2d 335, 343 (1978); and *Smith v. Andrews,* 54 Ill.App.2d 51, 203 N.E.2d 160, 163–64 (2nd Dist.1964) as supportive authority.)

We note that in Illinois, a situation where a defendant pleads guilty to criminal charges is distinguishable from a situation where a defendant has been criminally convicted on the merits at trial. *See Brown.* In the latter case, Illinois allows the evidence surrounding the prior criminal conviction to be admitted in any subsequent civil proceeding as *prima facie* evidence of the facts upon which the conviction is based. Plaintiff in the instant case argues for this *"prima facie* evidence approach" because it would preserve for him the opportunity to rebut the facts behind his conviction at a subsequent proceeding. However, significantly, plaintiff advances no persuasive authority from Illinois which would allow him to enjoy the *"prima facie* evidence approach" in a subsequent proceeding after he pled guilty to facts/charges in the initial proceeding.[2] Since *Allen* dictates that we treat state court judgments with the same preclusive effect as these judgments would be treated in the courts of the states rendering them, the district court in the instant case did not err when it collaterally estopped plaintiff from raising the issue of who fired the first shot on November 6, 1975. Plaintiff has simply not rebutted the authority of *Thornton, Smith* or *Frey* and, therefore, we are precluded at the federal level from reexamining the facts behind his guilty plea.

We take this opportunity to note the traditional limitation on the preclusive effect of the doctrine of collateral estoppel when a party has not had a "full and fair opportunity" to litigate the factual issue in dispute in the prior proceeding. Mentioning this limitation, plaintiff argues he was coerced into pleading guilty to one count of attempted murder because the police reports contained false information and misstatements of fact so detrimental that a plea for a light sentence appeared to be the only reasonable way out. Plaintiff believes

---

**2.** We also note that plaintiff failed to attack his plea within 30 days pursuant to Rule 604(d) of the Supreme Court rules of Illinois (S.H.A., Ch. 110A, § 604(d)). Plaintiff should have attacked, by motion to vacate or withdraw, or by appeal or writ of habeas corpus relief, the basis of his plea within 30 days according to Rule 604(d) or else he is precluded by the doctrine of collateral estoppel from doing so at a later date. *See People v. Frey,* 7 Ill.Dec. 59, 67 Ill.2d 77, 364 N.E.2d 46 (1977); *People v. Floyd,* 14 Ill.App.3d 1009, 303 N.E.2d 826 (1973).

934

the district court has effectively rewarded the police for filing false reports. Plaintiff argues Count IV of his complaint should never have been dismissed and defendants have now established that police can file false reports and be shielded from § 1983 liability.

Plaintiff fails to substantiate any facts which were unavailable or unknown to him when he pled out. There is no reason to believe plaintiff did not have a full and fair opportunity to present a defense to counter any disputed facts from the police reports at issue. The case advanced by plaintiff as supportive authority, *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir.1984), is distinguishable from the one at bar. *Bell* involved the racially motivated killing of a young Black man by a Milwaukee police officer in 1958. The police at the scene initially reported they saw a car without a tail light and when they followed it a man jumped out and shouted, "You won't catch me, I'm a holdup man!" The man was reported by police to be armed with a knife and police claimed he fit the description of an armed robber in relevant police files. The police reported they shot the fleeing felon when he lunged at them, knife in hand. It was not until 1978, close to twenty years later, that a policeman at the scene came forth and admitted the true facts behind the incident to the appropriate District Attorney's office. It was at this point that it was learned that the knife found in Bell's hand was planted (the knife was found in Bell's right hand and he was left-handed), that Bell never lunged at anyone, and that Bell was never suspected of being on a police list for armed robbers.

In 1979 Bell's relatives brought a § 1983 action in federal court after the police officer's 1978 admissions. We ruled the doctrine of collateral estoppel should not be applied to preclude a relitigation of the facts behind the case:

In Wisconsin, a state court judgment has no binding effect in subsequent litigation where the plaintiff proposes to rely on evidence that he or she was unable or failed to present in the first action on account of the defendant's fraud or con-

cealment.... This is not a case in which the defendant simply lied and thereby made the plaintiff's proof of his case difficult. Rather, this is a case of massive conspiracy by high ranking Milwaukee officials to prevent the disclosure of the true facts of the shooting of Daniel Bell.... defendants have not established that had Dolphus Bell (Daniel's father) and his attorney sought discovery, they would have obtained sufficient documentary and testimonial evidence to overcome the inquest finding of justifiable homicide, a finding facilitated by perjured testimony and the biased examination tack of District Attorney McCauley and Deputy Medical Examiner LaMonte. It was not until Officer Krause came forward in 1978 and revealed the true circumstances that plaintiffs could fairly present their case. [Parentheses added.]

*Bell*, at 746 F.2d 1227–28.

The special circumstances found in *Bell* which justified the exception to the application of the collateral estoppel doctrine simply are not present in the instant case. In the case at bar plaintiff was faced with what he believed to be false charges and he made no effort to challenge or rebut them. In *Bell*, the only interested parties who could challenge the police reports were relatives of the deceased. Despite the fact that the victim was dead and they were working on mere suspicion, the relatives of Bell still asked police for an explanation. Upon asking, they were confronted with police threats ("You can't tell you niggers nothing. Get out of here or I will throw you in jail."). In the instant case, plaintiff enjoyed the availability of his girlfriend, an eyewitness at the scene, to help substantiate his contentions. Yet plaintiff made no effort to get her to corroborate his version of events. Plaintiff also made no effort to question the police officers through discovery. Plaintiff, faced with his alleged injustice, knowingly pled guilty. The record indicates all proper warnings were given to plaintiff by the state court judge before the plea was taken. Indeed, plaintiff was specifically asked, "Has anyone used any abuse on your (sic) or threatened you or put you under any duress in order

to force you to plead guilty?" To this, plaintiff answered an unequivocal "No". (See appendix, appellees' brief, p. A–5.) Further, unlike *Bell*, no fresh material facts have been unearthed since the November 6, 1975 incident. Absent special circumstances or any material benefit a delay in the proceedings would have given plaintiff in defending his contentions, plaintiff was properly estopped from collaterally attacking his guilty plea.

 Plaintiff's final argument is that the district court erred in excluding expert medical evidence concerning a psychiatric disorder afflicting Officer Terry. Plaintiff claims Terry suffered from agoraphobia, among other things, which could cause him to have "panic attacks" in stressful situations. The district court excluded the evidence under F.R.Evid. 403, ruling the probative value was outweighed by its potential prejudicial impact. We review the district court evidentiary ruling under an abuse of discretion standard. *U.S. v. Hyman*, 741 F.2d 906, 913 (7th Cir.1984); *U.S. v. Falco*, 727 F.2d 659 (7th Cir.1984). We see no abuse of discretion in this ruling. There is no evidence Officer Terry suffered from an anxiety or panic attack during the relevant incident. There was also sufficient indication of an absence of these attacks during the time period surrounding the incident. Dr. Thamby testified the panic attacks did not occur until 1978. Dr. Pundy considered any pre-1978 incidents minor and isolated. We review the district court ruling with "great deference." *U.S. v. Falco*, 727 F.2d 659, 665 (7th Cir.1984). We find no reversible error. The district court could have quite conceivably considered evidence of Officer Terry's condition more prejudicial than probative. We note the district court also excluded any evidence concerning Officer Terry's medical condition under F.R.Evid. 404. Having ruled the evidence properly excluded under F.R.Evid. 403, we need not reach the district court's rulings under F.R.Evid. 404.

---

\* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement

The decision of the district court is AFFIRMED.

### ORDER

The motion for reconsideration of denial of petition for rehearing, with suggestion of rehearing *en banc*, is denied. No active member of this Court favored rehearing the appeal *en banc*.

The resolution of the first and second issues raised by plaintiff-appellant in the motion for reconsideration does not depend on any possible conflict between our opinion in this case and *Country Mutual Insurance Co. v. Duncan*, 794 F.2d 1211 (7th Cir.1986).

The mandate shall issue herewith.