Paul CALUSINSKI, Plaintiff–Appellant,

v.

James KRUGER, John Terry and Michael Gillette, Defendants–Appellees.

No. 93–2126.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 8, 1994.

Decided May 16, 1994.

Harvey Melinger, Steven R. Hansen, Chicago, IL, Robert L. Renfro, Huck, Bouma, Martin, Charlton & Zellner, Glen Ellyn, IL, Howard Peritz (argued), Buffalo Grove, IL, J. Douglas Weingarten, Chicago, IL, for plaintiff-appellant.

Charles E. Hervas (argued), James G. Sotos, Michael W. Condon, Michael D. Bersani, Hervas, Sotos & Condon, Itasca, IL, for defendants-appellees.

Before PELL, WOOD, Jr., and ESCHBACH, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

On February 23, 1988, Cheryl Calusinski, the wife of Plaintiff Paul Calusinski, called her brother-in-law who in turn called the Carpentersville police department to report a domestic dispute in progress. Officers James Kruger and John Terry, two of the defendants here,[1] were dispatched to the Calusinski home. When the officers arrived, Kruger knocked on the front door and identified himself as a police officer. A male voice (later identified as the plaintiff's) from behind the door told Kruger to go away. Kruger responded that he just wanted to make sure everything was alright inside, and the male voice again instructed the officer to leave. A female voice then shouted "help, get me out of here." Officer Kruger told Mr. Calusinski to open the door immediately or otherwise he would forcefully enter the home. When Calusinski refused to open the

1. Plaintiff's third amended complaint names Officer James Kruger, Officer John Terry, and Officer Michael Gillette as defendants in this case.

door, Kruger kicked down the door and entered the home with Terry following.

Inside the home the officers found Mrs. Calusinski crying on the couch with a child in her lap. Mr. Calusinski was sitting on a second couch screaming at the officers to leave the home. Dudley, a large dog weighing more than one hundred pounds, came down the stairs. Mr. Calusinski ordered the dog to "watch them [the officers]." Dudley barked and showed his teeth. Fearing an attack by the dog, Terry told Kruger to shoot the dog if it moved. In order to protect the dog, Mrs. Calusinski escorted Dudley to another room.

Kruger then informed Mr. Calusinski that he was under arrest. Mr. Calusinski asked what the charges were. After receiving no immediate response, he swore at the officers, refused to cooperate, and refused to be handcuffed. Kruger repeated that Mr. Calusinski was under arrest, grabbed Mr. Calusinski's arm, and attempted to cuff him. When these actions failed, Kruger displayed his SR 5000 stun gun[2] and advised Mr. Calusinski that he would use it if necessary. Mr. Calusinski continued his contumacy and Kruger used the stun device on Mr. Calusinski's side. Mr. Calusinski testified that he then told the officers that he was recovering from back surgery. Mr. Calusinski jumped off the couch and began moving quickly away from Kruger before he ran into Terry. The officers struggled with Mr. Calusinski in an attempt to subdue him, forcefully pushed him to the ground, and again applied their stun devices to Mr. Calusinski's midsection. Mr. Calusinski continued to resist arrest and kicked the officers. During this struggle, Officer Gillette arrived at the scene and also applied his stun device to Mr. Calusinski. In total, the defendants applied their stun devices somewhere between three and seven times, depending on whose set of facts are accepted.

Eventually the three officers were able to subdue Mr. Calusinski, handcuff him, and take him to the police station. He was charged with aggravated assault, resisting arrest, and disorderly conduct. At the sta-

tion, Mr. Calusinski complained of back pain and was then taken to the emergency room at Sherman Hospital. The hospital medical staff did not find anything wrong with Mr. Calusinski and released him back into police custody.

Mrs. Calusinski later dismissed the aggravated assault charges against her husband. However, Mr. Calusinski was tried and convicted of resisting a peace. officer in the Circuit Court of Kane County, Illinois.

On May 3, 1989, Mr. Calusinski filed this lawsuit under 42 U.S.C. § 1983 alleging constitutional violations arising out of his arrest on February 23, 1988. Only two claims were submitted to the jury, both implicating the Fourth Amendment of the United States Constitution: (1) whether Mr. Calusinski was arrested without probable cause; and (2) whether the defendants used excessive force during the arrest. At the conclusion of trial, a jury found in favor of the defendants. Following trial, the magistrate judge denied plaintiff's motion for a new trial. Plaintiff now appeals alleging numerous procedural errors during trial and challenging the sufficiency of the evidence. We find no merit in these arguments and affirm.

### ANALYSIS

This appeal raises several procedural and evidentiary issues including (1) whether the magistrate judge properly admitted evidence of Mr. Calusinski's criminal conviction for resisting arrest; (2) whether the magistrate judge properly instructed the jury on the issue of probable cause; (3) whether the magistrate judge properly excluded testimony on subsequent incidents of excessive use of force by Officer Terry and other Carpentersville police officers; and (4) whether the magistrate judge abused her discretion in denying plaintiff's motion for a new trial. We review each of these arguments separately.

### I. Admissibility of Criminal Conviction

■ Before trial Mr. Calusinski filed a motion *in limine* to bar defendants from

---

**2.** At trial Officer Gillette explained that this hand-held stun device causes an involuntary re-

laxation of muscles, thus diminishing resistance by the arrestee.

using during trial evidence of his conviction for resisting arrest on the occasion in question. The magistrate judge denied this motion and Mr. Calusinski contends that this was error. We review the district court's rulings on a motion in limine under an abuse of discretion standard. *Binks Mfg. Co. v. National Presto Indus., Inc.,* 709 F.2d 1109, 1115 (7th Cir.1983).

 The use of state criminal convictions as evidence in subsequent federal section 1983 actions has been sufficiently addressed by two cases in this circuit. *Rodriguez v. Schweiger,* 796 F.2d 930, 932–33 (7th Cir.1986), *cert. denied,* 481 U.S. 1018, 107 S.Ct. 1899, 95 L.Ed.2d 506 (1987); *Brown v. Green,* 738 F.2d 202, 206 (7th Cir.1984). Citing *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), we recognized that 28 U.S.C. § 1738 (1966) addresses the preclusive effect of criminal convictions, and this statute applies in section 1983 actions. *Rodriguez,* 796 F.2d at 932–33. *Allen* states: "Congress has specifically required all federal courts to give preclusive effect to state court judgments whenever the courts of the State from which the judgment emerged would do so." *Allen,* 449 U.S. at 96, 101 S.Ct. at 415. Here Mr. Calusinski was convicted in Illinois where "evidence of a prior criminal conviction is admissible in a civil proceeding as *prima facie* evidence of the facts upon which the conviction is based if those facts are relevant to some issue involved in the civil proceeding." *Brown,* 738 F.2d at 206.[3] For this *prima facie* rule to apply, "the criminal proceedings must have been 'of sufficiently serious import' to ensure the reliability of the conviction." *Id.,* quoting *Thornton v. Paul,* 74 Ill.2d 132, 151, 23 Ill. Dec. 541, 549, 384 N.E.2d 335, 342 (1978). Thus we must determine whether Mr. Calu-

sinski's conviction for resisting arrest is of sufficiently serious import.

Illinois criminal statutes broadly classify crimes in four different categories: felonies, misdemeanors, petty offenses, and business offenses. The misdemeanors category is further divided into three classifications, A, B, and C. Class A is the most serious type of misdemeanor for which Illinois law imposes the harshest penalties. *See* John F. Decker, *Illinois Criminal Law* 731–32 (1986). Resisting arrest, a class A misdemeanor in Illinois, carries a potential penalty of up to one year in jail and a fine of $1,000. 730 ILCS 5/5–8–3, 5/5–9–1 (1993). These potential penalties are distinctly more severe than fines typically imposed for traffic violations. In the absence of any evidence that the underlying criminal proceedings are otherwise unreliable, we find that resisting arrest satisfies the "sufficiently serious import" requirement. *See Brown,* 738 F.2d at 209.[4] Therefore the magistrate judge properly admitted evidence of Mr. Calusinski's conviction for resisting arrest as prima facie evidence that he forcefully resisted attempts by the officers to arrest him.

Plaintiff cites *Smith v. Andrews,* 54 Ill. App.2d 51, 203 N.E.2d 160 (2d Dist.1964), and argues that a trial for resisting arrest is a relatively informal proceeding similar to a traffic court proceedings where the criminal defendant is often unrepresented by counsel and frequently does not assert a vigorous defense. *Id.* at 60, 203 N.E.2d at 165. He argues that here the criminal proceedings were informal because they occurred outside the presence of a court reporter. Mr. Calusinski also suggests that all misdemeanor charges should be considered informal because "misdemeanor defendants are frequently unrepresented by counsel." We find

---

3. Illinois law treats the admissibility of evidence following conviction after a trial on the merits differently than where a defendant enters a guilty plea. Where the defendant has pled guilty, only the facts contained in the complaint may be used against the defendant in a subsequent proceeding. *Rodriguez,* 796 F.2d at 933.

4. In *Brown* the criminal defendant had previously been convicted of resisting arrest and battery. He then sued the officers under 42 U.S.C. § 1983 alleging that the officers violated his constitution-

al rights by using excessive force during his arrest. When the plaintiff moved to prevent the defendant from introducing evidence of the criminal conviction, the district court granted the motion. We reversed holding that where the criminal defendant has pled guilty and received court supervision, this should be treated as a conviction and as *prima facie* evidence of the underlying facts. Notably, *Brown* involved the same crime as the instant case, resisting arrest. *Brown,* 738 F.2d at 206–09.

plaintiff's argument unpersuasive. First, plaintiff fails to suggest how the absence of a court reporter made these misdemeanor charges insignificant. Second, Mr. Calusinski was represented by counsel at his criminal trial.[5]

## II. Jury Instruction 24

Mr. Calusinski argues that the magistrate judge erroneously instructed the jury on the offenses for which probable cause existed when the officers arrested him by including a reference to disorderly conduct. Instruction 24 stated: "In this case, defendants allege that plaintiff committed the crimes of assault, aggravated assault and disorderly conduct," and then went on to properly define each of these crimes. Despite the proper definitions, plaintiff argues that this instruction is erroneous because none of the defendants testified during trial that they had probable cause to suspect that Mr. Calusinski committed the crime of disorderly conduct.

 Our review of jury instructions consists of two steps. First, we must determine whether the "instructions as a whole were sufficient to inform the jury correctly of the applicable law." *United States v. Villarreal*, 977 F.2d 1077, 1079 (7th Cir.1992), *cert. denied*, ―― U.S. ――, 113 S.Ct. 1350, 122 L.Ed.2d 731 (1993); *Doe v. Burnham*, 6 F.3d 476, 479 (7th Cir.1993). Second, if an instruction misguides a jury, we must determine whether the litigant has been prejudiced as a result. *Id.* Applying this test, we find that instruction 24 properly informed the jury on whether probable cause existed.

Probable cause without a warrant exists if:

at the moment the arrest was made, the officers had probable cause to make it— whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.

*Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *United States v. Patino*, 862 F.2d 128 (7th Cir.1988), *cert. denied*, 490 U.S. 1069, 109 S.Ct. 2072, 104 L.Ed.2d 637 (1989); *United States v. Hairston*, 763 F.2d 233, 235 (7th Cir.), *cert. denied*, 474 U.S. 854, 106 S.Ct. 158, 88 L.Ed.2d 131 (1985). We use an objective standard in determining whether the officers' "subjective knowledge of facts were sufficient to constitute probable cause" to arrest Mr. Calusinski rather than the officers' view of the legal basis for the arrest. *Richardson v. Bonds*, 860 F.2d 1427, 1430–31 & n. 2 (7th Cir.1988).

 At the time of the arrest police officers need probable cause that *a* crime has been committed, not that the criminal defendant committed all of the crimes for which he or she is later charged. Here the defendants presented evidence on at least one of the crimes mentioned in instruction 24, thus establishing that probable cause existed when Officers Kruger and Terry arrested Mr. Calusinski. The defendants offered evidence showing that the police received a phone call reporting a domestic violence incident at Mr. Calusinski's house. When Officers Terry and Kruger arrived at the house and knocked on the door, they were told to go away. The officers entered the house only after hearing a cry for help. Once in the house they were confronted by the dog. Mr. Calusinski instructed Dudley to "watch" the officers. Officer Terry testified that he was afraid that Dudley might attack either Officer Kruger or himself, and that was the reason he instructed Officer Kruger to shoot the dog if it moved. A jury could conclude that these circumstances placed the officers in reasonable apprehension of bodily harm and that they had probable cause to believe an assault had been committed, thus justifying the arrest of Mr. Calusinski. *See United States v. Benjamin*, 995 F.2d 756, 759 (7th Cir.1993). Plaintiff neither disputes this finding nor suggests how this reference to disorderly conduct confused or misled the jury. Therefore, we hold that jury instruction 24, when considered as a whole, did not mislead the jury and note that, because prob-

---

**5.** For purposes of noting that Mr. Calusinski was represented by counsel in the underlying criminal proceeding, we take judicial notice of the "Bystanders Report" filed in the Circuit Court of Kane County on April 17, 1989.

able cause existed, plaintiff's false arrest claim under § 1983 is absolutely barred. *Friedman v. Village of Skokie,* 763 F.2d 236, 239 (7th Cir.1985); *Terket v. Lund,* 623 F.2d 29, 31 (7th Cir.1980).

### ·III. The Sheetz Witnesses

In an effort to establish municipal liability against the Village of Carpentersville, Mr. Calusinski attempted to introduce testimony from Nancy Sheetz, Cassandra Sheetz, and Roger Sheetz (the "Sheetz witnesses") regarding another incident three and one-half years *after* Mr. Calusinski was arrested where Officer Terry and several other Carpentersville police officers allegedly used excessive force while making an arrest in a domestic violence incident. When the defendants moved the court to exclude the testimony, the magistrate judge granted the motion. Mr. Calusinski then made an offer of proof. Plaintiff now contends that the magistrate judge abused her discretion and should have allowed the Sheetz witnesses to testify in order to prove a pattern of conduct by agents of the Village of Carpentersville.

The trial court properly excluded this testimony for two reasons. First and foremost, plaintiff's third amended complaint does not name the Village of Carpentersville as a defendant. Without a municipal defendant, municipal liability is entirely irrelevant. Second, subsequent conduct usually cannot be used to establish municipal liability. In *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities and other local governments may be held liable under 42 U.S.C. § 1983 for any deprivation of constitutional rights caused by an official policy, or governmental custom and usage not formally approved or authorized. *Id.* at 690–91, 98 S.Ct. at 2035–36. A plaintiff must show that the municipal policy or custom and usage proximately caused the alleged unconstitutional conduct, *id.* at 693–94, 98 S.Ct. at 2037, and

this usually requires more than a single incident of unconstitutional conduct. *Powe v. City of Chicago,* 664 F.2d 639, 650 (7th Cir. 1981). *See also Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir.1985).

The problem with the proffered testimony is that subsequent conduct is irrelevant to determining the Village of Carpentersville's liability for the conduct of its employees on February 23, 1988. Holding a municipality liable for its official policies or custom and usage is predicated on the theory that it knew or should have known about the alleged unconstitutional conduct on the day of the incident. Evidence of an incident that occurred years after the conduct in issue was properly excluded by the magistrate judge.[6]

### IV. Motion for New Trial

As his final argument, plaintiff argues that the district court erred in denying his motion for a new trial because the jury's verdict is not supported by the evidence presented at trial. A new trial may be granted by the trial judge " 'only when the jury's verdict is against the clear weight of the evidence.' " *Hardin, Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.,* 962 F.2d 628, 640 (7th Cir.1992), quoting *Davlan v. Otis Elevator Co.,* 816 F.2d 287, 289 (7th Cir.1987). Our review of this issue requires us to accord the jury's verdict great deference and we will reverse only where the trial judge has abused his or her discretion in denying the motion for new trial. *Valbert v. Pass,* 866 F.2d 237, 239 (7th Cir.1989); *Foster v. Continental Can Corp.,* 783 F.2d 731 (7th Cir.1986). A jury's verdict will not be overturned if it has a reasonable basis in the record. *Dallis v. Don Cunningham and Assocs.,* 11 F.3d 713, 715 (7th Cir.1993).

Varying slightly from the earlier argument that the trial judge improperly instructed the jury about disorderly conduct, Mr. Calusinski now argues that the defendants, in fact, did not have probable cause to arrest him, and that the evidence clearly demonstrated ex-

---

**6.** In this section of the brief, plaintiff also argues that the Sheetz witnesses should have been allowed to testify that Officer Terry refused · to advise Mr. Sheetz of the crime for which he was being arrested. This testimony is irrelevant for the same reasons set forth above. Further, at the time of arrest an arrestee does not have a Fourth

Amendment or Sixth Amendment right to be informed of the reason for the arrest. *Kladis v. Brezek,* 823 F.2d 1014, 1018 (7th Cir.1987). "The Sixth Amendment's protection does not come into play until the government has committed itself to prosecution." *Id.*

cessive use of force by the defendants. These arguments are questionable at best.

■■ As we determined above, the record contains sufficient evidence to support the jury's conclusion that the defendants had probable cause to arrest Mr. Calusinski for assault. Therefore, we must determine only whether the record contains evidence to support the jury's conclusion that the defendants did not use excessive force during the arrest.

During trial each of the three defendants testified that Mr. Calusinski refused to go quietly when placed under arrest. Their explicit testimony described how Mr. Calusinski refused to be handcuffed and attempted to flee. Officer Kruger testified that he warned the plaintiff that he would use his stun gun if necessary. Further, the defendants introduced expert testimony through Dr. Kevin Parsons explaining the proper procedures used by law enforcement officials to restrain arrestees who resist arrest. Parsons further opined that the defendants' actions were well within proper guidelines for use of force by the police. All of this testimony fully supports the jury's verdict in favor of the defendants, and the magistrate judge did not abuse her discretion when she denied plaintiff's motion for a new trial.

For the foregoing reasons, the judgment is AFFIRMED.